1  MARK POE (S.B. #223714)
     mpoe@gawpoe.com
2  RANDOLPH GAW (S.B. #223718)
     rgaw@gawpoe.com
3  SAMUEL SONG (S.B. #245007)
     ssong@gawpoe.com
4  VICTOR MENG (S.B. #254102)
     vmeng@gawpoe.com
5  GAW | POE LLP
   4 Embarcadero, Suite 1400
6  San Francisco, CA 94111
7  Telephone: (415) 766-7451
   Facsimile: (415) 737-0642
8
9  Attorneys for Plaintiffs

10

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14  L.A. INTERNATIONAL CORP., et      Case No. 2:18-cv-06809-MWF-MRW
    al.,
15                                    **REDACTED VERSION OF**
                      Plaintiffs,     **DOCUMENT SOUGHT TO BE**
16                                    **FILED UNDER SEAL**
17        v.                          **PLAINTIFFS' OPPOSITION TO**
                                      **DEFENDANTS' MOTION *IN***
18  PRESTIGE BRAND HOLDINGS,          ***LIMINE* NO. 1 TO EXCLUDE**
    INC., et al.,                     **EVIDENCE OF DIVERTED SALES**
19                                    **AND LOST CUSTOMERS**
                      Defendants.
20                                    Hearing Date:   Dec. 23, 2019
                                      Time:           11:00 a.m.
21                                    Courtroom:      First Street Courthouse,
                                                      Courtroom 5A, 5th Floor
22
23                                    Final Pretrial Conf.:   Dec. 23, 2019
                                      Trial Date:             Jan. 21, 2020
24

25

26

27

28

Defendants' Motion *in Limine* No. 1 seeks an order "precluding Plaintiffs from using any evidence that Plaintiffs' customers purchased [Clear Eyes] from Costco [Business Center] and/or Sam's Club[.]"  (ECF No. 194 ("Mot.") at 4.)

Defendants base that request on the grounds that testimony and evidence that Plaintiffs' customers informed them that they bought Clear Eyes from Costco Business Center ("CBC") or Sam's Club instead of from Plaintiffs because of those chain stores lower prices is hearsay.  But legions of cases have held that such customer statements are admissible to prove customer motive under Federal Rule of Evidence ("Rule") 803(3).  And those customer statements are corroborated by Plaintiffs' direct observations of those customers' refusal to buy Clear Eyes from them, which is categorically not hearsay.  Moreover, the testimony and evidence concerning Plaintiffs' customers purchasing Clear Eyes at CBC or Sam's Club instead of from Plaintiffs is admissible under Rule 701 as the lay opinion testimony of Plaintiffs, Defendants' own former sales broker, and Costco's Marketing Manager—all of whom personally witnessed the impact of the price discrimination at issue and have decades of combined experience in the wholesale industry. Defendants contend in utterly conclusory terms that introduction of this evidence would be unduly prejudicial, but the only prejudice they would suffer is the revelation of the truth.  Their Motion should be denied.

## I.   THE CUSTOMER STATEMENTS ARE NOT PRECLUDED BY THE HEARSAY RULE.

### A.   The Customer Statements Are Admissible to Prove Motive Under Rule 803(3).

Defendants contend that testimony and evidence "concerning conversations between Plaintiffs and their customers" about those customers' reasons for buying Clear Eyes from CBC or Sam's Club "are inadmissible hearsay and not subject to any [hearsay] exception[.]"  (Mot. at 7-8.)  Legions of cases have rejected this very argument, because such customer statements are admissible for the purpose of proving customer motive under Fed. R. Evid. 803(3).

For instance, in *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990), the plaintiff in an RPA price-discrimination case "proferred excerpts from depositions of its employees" as "proof of lost sales or profits." *Id.* at 1536. One of the plaintiff's employees testified that a customer had "told [him] that the reason he switched to [the favored purchaser] was that [the plaintiff's] prices were 'way out of line with [the products at issue]—I'm buying them from your competitor.'" *Id.* at 1536-37. While the district court acknowledged that the testimony would be admissible under Fed. R. Evid. 803(3), it found that the "customer's motive for not purchasing from [the plaintiff] was [not] relevant." *Id.* at 1536 n.11. The Third Circuit held that "[t]he district court erred in this regard" because: (a) "the reason why a customer was not doing business with a particular seller is relevant in a lost/profits sales inquiry and its causal connection to the pricing practices of the alleged violator," and (c) "[i]f [the plaintiff] was losing sales or was being forced to cut its selling prices and thereby reducing its profits to meet [the favored purchaser's] price, this is directly related to actual injury." *Id.* Given the relevance of customer motive in an RPA case, the court made clear that "'[s]tatements of a customer as to his reasons for not dealing with a supplier are admissible for this limited purpose,' *i.e.*, the purpose of proving customer motive, but not as evidence of the facts recited as furnishing the motives" (*i.e.*, that prices were in fact "way out of line"). *Id.* (quoting *Herman Schwabe, Inc. v. United Shoe Machinery Corp.,* 297 F.2d 906, 914 (2d Cir.1962)).

Similarly, in *Callahan v. A.E.V., Inc.*, 182 F.3d 237 (3d Cir. 1999), "several of the plaintiffs testified that various customers, some identified and some not, told them that they no longer shopped at the plaintiffs' stores because of the [competitor] Beer World stores' operations." *Id.* at 251. For instance, one plaintiff stated that she "'had quite a few customers come in and say they wanted the same deal [lower prices] from me or they were just going to buy their beer from [Beer World], and I said I just can't give you that deal.'" *Id.* Another plaintiff "discussed

at length conversations . . . in which the customer revealed that he was going to Beer World because of the prices." *Id.*  The district found the customer statements inadmissible, but the Third Circuit reversed. *Id.* at 252.  The court explained that the plaintiffs offered the "testimony that their customers told them that they were purchasing beer from the Beer World stores and not the plaintiffs . . . for 'the [limited] purpose of proving customer motive,' for which purpose we found such evidence admissible under Rule 803(3)."[1]  *Id.*

Courts in this District have followed this longstanding rule.  In fact, just this past August, Judge Marshall rejected an identical argument made by the defendants in an RPA case involving 5-Hour Energy:

> Defendants also object to testimony from Plaintiffs' witnesses regarding hearsay statements made by customers regarding whether and why the customers bought Five-Hour Energy from Costco rather than from Plaintiffs' stores.  These statements are admissible hearsay because they go to the motives of these customers in their purchasing decisions. Fed. R. Evid. 803(3).  These objections are OVERRULED.

(ECF No. 119-1 at 2, *U.S. Wholesale et al. v. Living Essentials*, No. 18-cv-1077-CBM-Ex, "Order Re Motions to Exclude Expert Opinions and Objections to Evidence" at 2, ECF No. 290.)

As another example, in *Consol. Credit Agency v. Equifax, Inc.* No. CV-03-1229 CAS(CWX), 2005 WL 6218038, at (C.D. Cal. Jan. 26, 2005), the plaintiff in a Sherman Act price-fixing case filed a motion *in limine* seeking the admission of

---

[1] Notably, *Callahan* and other courts have held that the customers need not be identified for their statements to be admissible under Rule 803(3), because "[t]he relevance of their statements depends only on the fact that they were the plaintiffs' customers, not their particular identities."  182 F.3d at 252 n.11; *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 205 (2d Cir. 2015) ("Sleepy's inability to identify the customers whose states of mind were at issue did not render the evidence hearsay on that point.").

testimony "'from resellers about direct communications they had with customers and suppliers about reasons why such customers and suppliers stopped dealing with the reseller.'"  *Id.* at *1.  In response, the defendant argued that the "state of mind" of customers was not at issue in the case and that "statements regarding motive cannot be admitted for the truth of the matter asserted therein." *Id.* at *1.  In ruling for the plaintiff, Judge Snyder found that:

> "Statements revealing a person's state of mind may be relevant evidence to show matters such as ... [a] customer's reason for refusing to deal with a supplier or dealer." ....  Courts have held that statements from customers regarding their reasons for not dealing with a supplier are admissible for the limited purpose of proving customer motive, but not as evidence of facts recited as furnishing the motives ***in antitrust cases***.

*Id.* at *2 (citations omitted; emphasis added); *see also Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*, No. CV159814DSFAGRX, 2017 WL 6512223, at *4 n.9 (C.D. Cal. Oct. 16, 2017) (Fischer, J.) (recognizing in Sherman Act case that plaintiffs' "records of customer statements regarding their reasons for not using Plaintiffs' services . . . falls within the Rule 803(3) exception for statements of motive, as has been recognized by numerous courts").[2]

---

[2] *Accord Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 90 (1st Cir. 2017) ("Out-of-court statements by a customer or employee may be admissible under Rule 803(3) to show intent or motive."); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 204 (2d Cir. 2015) (testimony by plaintiff's employee that customer wanted to cancel purchase because plaintiff's product was inferior "was admissible evidence for the limited purpose of the customer's belief that the Select Comfort merchandise sold by Sleepy's was inferior"); *GF Princeton, L.L.C. v. Herring Land Grp., L.L.C.*, 518 F. App'x 108, 113 (3d Cir. 2013) ("Testimony as to customer motivation is admissible as an exception to hearsay under Fed.R.Evid. 803(3)."); *Smith Wholesale Co., Inc. v. R. J. Reynolds Tobacco Co.*, No. 2:03-CV-30, 2005 WL 8162569, at *5 (E.D. Tenn. Feb. 23, 2005) ("the *sales representatives* may testify what they were directly told by a plaintiff's retail customers").

None of the cases Defendants cite for the notion that courts "routinely" hold that customer statements are inadmissible hearsay even mentions Rule 803(3)'s exception for customer motives.  In *Water, Inc. v. Everpure, Inc.*, No. CV 09-3389 ABC (SSX), 2011 WL 13174224 (C.D. Cal. Dec. 19, 2011), the plaintiff was "admittedly offering EDCO's statements to Avignon to prove their truth[.]"  *Id.* at *8.  In *Ryan v. Editions Ltd. W., Inc.*, No. C-06-4812 PVT, 2007 WL 4577867, the plaintiff asserted in a declaration that "[a] number of potential customers have stated to me that they have purchased canvas transfers of my posters from various sources" for the truth of those statements—to establish damages in a copyright action.  *Id.* at *7.  Further, *Weaver v. Bright Horizons Family Sols., Inc.*, No. CV165325DSFJPRX, 2017 WL 11428736 (C.D. Cal. June 26, 2017), did not address customer statements, customer motives, or Rule 803(3) at all, and instead addressed the wholly irrelevant issue of whether a deceased plaintiff's declaration was admissible under FRE 807's residual exception.  *Id.* *4.  And, in *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1117 (C.D. Cal. 2007), the out-of-court statement was found inadmissible to prove its truth, but "was admissible, however, to show … motivations."  *Id.* at 1117 n.79.

Defendants also contend that Rule 803(3) "applies to customers' statements ***only*** in Lanham Act cases where the customers' statements were introduced to 'show actual confusion by plaintiff's customers through an act of misidentification,' and where the customers' statements were 'nearly contemporaneous with the incident described and made with little chance for reflection.'"  (Mot. at 9 (citation omitted; emphasis added).)  Of course, Defendants do not and cannot cite any authority holding this exception "only" applies in Lanham Act case, given the fact that it has been applied in a variety of contexts, including in RPA and other antitrust cases.  *See, e.g.*, *Feeser*, 909 F.2d at 1536 n.11 (applying exception in RPA case); *Consol. Credit Agency*, 2005 WL 6218038, at *2 (Snyder, J., applying exception in antitrust case).  Moreover, the customer

statements described by Plaintiffs were precisely contemporaneous with the conversations they had with the customers, with no chance for reflection.

So while the testimony or other evidence describing the customer statements by itself may be inadmissible to prove the fact that the customers purchased Clear Eyes from CBC or Sam's Club because of their lower prices, there is no question that it *is* admissible to prove Plaintiffs' customers' *motives* for doing so.

**B.      The Customer Statements Are Corroborated by Non-Hearsay Evidence of Plaintiffs' Lost Sales.**

Defendants would have the Court believe that Plaintiffs merely testified that customers told them that they bought Clear Eyes from CBC or Sam's Club because of their lower prices.  (*See* Mot. at 5-6.)  But what Defendants fail to mention is that Plaintiffs described those customer statements in the context of testifying that those customers had stopped buying Clear Eyes from them.  That testimony is *not* hearsay, is admissible to prove lost sales, and corroborates the evidence of motive.

As the court in *Callahan* explained:

[T]he plaintiffs' own testimony about the actual behavior of their customers is not hearsay.  Rather, it is admissible evidence of lost business, although not of the reason therefore.  Thus, in the present case, the plaintiffs' testimony that certain customers no longer purchased beer from them, coupled with their testimony concerning the customers' statements of their motive, which is admissible hearsay under Rule 803(3), ***are together evidence of the fact of damage***.

182 F.3d at 253 (emphasis added); *see also Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 133 (3d Cir. 2004) ("In this case, the tellers described what they saw and the action they took with respect to customers who appeared to be confused with respect to CFG and CNBEC.  This is not hearsay."); *GF Princeton, L.L.C. v. Herring Land Grp., L.L.C.*, 518 F. App'x 108, 114 (3d Cir. 2013) ("GF Princeton corroborated its evidence of tenant motivation with non-

hearsay evidence.").

Here, in describing the customer statements, each Plaintiff whose testimony Defendants purport to summarize testified about the actual behavior of their customers in refusing to buy Clear Eyes from them.  For example:

- Plaintiff AKR's president and owner Magid Rashidzada testified that at the "point of sale," customers "would mention to us, 'Hey, we're buying this cheaper from outside sources,'" and "we would see a flyer out of a Costco Business Center…. ***And if we were not able to compete … , we wouldn't be able to sell to them, and then you would see sales tapering off***."  (Decl. of Samuel Song ("Song Decl.") Ex. A at 140:9-24 (emphasis added).)

- Plaintiff Excel's president and owner Farid Tursonzadah testified that its top Clear Eyes customer "***stopped purchasing this item altogether***," and in this context, "told me they were getting it through … Costco." (*Id*. Ex. B at 163:9-164:12 (emphasis added); *id.* at 168:7-13 (customer "wouldn't buy Clear Eyes when being offered recently just because they said they have a Sam's Club over there that they purchase it from").)

- Plaintiff L.A. International's sales director and owner Mohamed Amini testified:  "We get customers that come in and be like, 'Can you match the price at Costco?'  And if we can't, they'll let us know, like, 'Well, I'm just going to go over to Costco and buy it.'" (*Id*. Ex. C at 144:6-10.)

- Plaintiff L.A. Top's president and owner Frank Kohanim testified that "our sales went down to almost zero" because of the pricing at CBC and Sam's Club (*id.* Ex. D at 95:17-20), and attested that its "customers have told me that they purchase Clear Eyes from CBC and/or Sam's Club instead of from L.A. Top because of the deals those chain stores have offered on Clear Eyes." (Kohanim Decl. (ECF No. 103) ¶ 5.)

- Plaintiff Manhattan's manager and owner Javid Sharifi testified that customers told him, "'Oh, no forget it.  I'm not going to pick up the Clear Eyes.'  'Why not?'  'I'll just go to [the CBC in Hackensack, New] Jersey and

pick it up,'" "because of how close Costco is to us, the Costco warehouse to our warehouse." (Song Decl. Ex. E at 136:21-137:16.)

- Plaintiff Value's manager and owner Neelab Jalili testified that its "customers specifically told [Value] that they no longer buy the Pocket Pal product from [Value] because they now buy it from Costco" (Song Decl. Ex. G at 111:14-17), and that customers have "come to Value with Costco's booklets ... [s]howing the promotional price" and "ask[ed] Value ... if they can match Costco." (*Id.* at 129:2-15.)

Plaintiffs' testimony about the "actual behavior of their customers" in refusing to buy Clear Eyes from them and showing CBC's promotional price "is not hearsay." *Callahan*, 182 F.3d at 253. That testimony is "admissible evidence of lost business, although not of the reason therefore." *Id.* Thus, Plaintiffs' testimony that "certain customers no longer purchased [Clear Eyes] from them, coupled with their testimony concerning the customers' statements of their motive [i.e., lower prices at CBC or Sam's Club], which is admissible hearsay under Rule 803(3), are together evidence of the fact of damage." *Id.* Defendants' request to preclude this highly probative and admissible evidence should be rejected.

## II.   TESTIMONY AND EVIDENCE CONCERNING CUSTOMER STATEMENT ARE ADMISSIBLE AS LAY OPINION TESTIMONY.

Even if the Court were to find that Rule 803(3) does not apply to the customer statements, they are still admissible under Rule 701 as lay opinion testimony. Under Rule 701, "lay witnesses can testify to inferences or opinions that are drawn from a series of personal observations over time." *Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 887 (C.D. Cal. 2006). "Additionally, courts may allow lay witnesses to testify to opinions based on a combination of their personal observations regarding the incident in question and their specialized knowledge obtained through their vocation." *Id.*

As Defendants' acknowledge, the six Plaintiff representatives whose

testimony they challenge are the officers, owners, and managers who handle the day-to-day operations of Plaintiffs' businesses.  (*See* Mot. at 5-6.)  And, as demonstrated by the deposition transcripts submitted in connection with this Motion, the testimony that Defendants seek to exclude consists of "personal observations regarding" the lost sales in question and "their specialized knowledge obtained through their vocation."  *L.A. Times Commc'ns*, 442 F. Supp. 2d at 887; *see also United States v. Polishan,* 336 F.3d 234, 242 (3d Cir.2003) ("A witness testifying about business operations may testify about 'inferences that he could draw from his perception' of … 'facts or data perceived' by him in his corporate capacity.").  The facts here were not difficult to perceive for any person with a modicum of business experience:  customers refused to buy Clear Eyes from Plaintiffs and stated the reason for their refusal (lower prices at CBC or Sam's Club), which Plaintiffs were independently aware of.

Defendants contend that these Plaintiff representatives were not "present during their customers' alleged purchases from Costco," and their "customers purchase decisions are far outside of the personal knowledge of Plaintiffs' representatives."  (Mot. at 10.)  But their testimony was rationally based on their observations and experience that the customers had stopped buying Clear Eyes from them, that CBC and Sam's Club were offering lower prices on that product, and that the customers informed them that they were buying it from those chain stores instead of from Plaintiffs.

As to the testimony and emails by Hector Garcia (Mot. at 7), Mr. Garcia was Defendants' own sales broker and handled Defendants' sales of Clear Eyes to multiple Plaintiffs from at least 2014 to June 2018, and has worked in the wholesale industry since at least 1997.  (Song Decl. Ex. H at 9:1-12:13.)  Defendants contend that Mr. Garcia "admittedly is relying solely on the self-serving claims reported to him by Plaintiffs" (Mot. at 11), but they do not cite any evidence of this purported admission or that he was relying "solely" on reports from Plaintiffs.  Rather, as

1   Defendants themselves concede, Mr. Garcia testified that "J&J was losing sales" of
2   Clear Eyes, which reflected the fact that Plaintiff "AKR is not buying from
3   [J&J][.]"  (Mot. at 7.)  Mr. Garcia's personal observations of those declining sales,
4   coupled with his 22+ years in the wholesale business, is more than sufficient to
5   support his testimony and emails.

6        Lastly, Defendants seek to exclude a January 18, 2019 from Costco
7   employee Abdel Ahmed reporting internally that ████████████████████████
8   ████████████████████████████████████████████
9   ██████████████████████████████████████████████
10  ██████  (Mot. at 6, 10-11.)  Mr. Ahmed is Costco's Marketing Manager of the
11  Costco Business Center located in Hackensack, New Jersey, ████████████████
12  ██████████████████████████████████████████████
13  ████████████████████████████  (*See* ECF No. 161-4 (Ex. 103).)
14  Given his personal observations of ██████████████, and his knowledge as
15  the Marketing Manager of that CBC, his statements are far from "speculation," as
16  Defendants contend.  (Mot. at 10.)  Defendants are free to argue to the jury that Mr.
17  Ahmed does not know "the ultimate source of all Clear Eyes in the area" (Mot. at
18  11), but under Rule 701, Mr. Ahmed's lay witness opinions based on his
19  observations and knowledge obtained as Costco's Marketing Manager are
20  admissible and unquestionably helpful to determining a fact in issue.

21  **III.   DEFENDANTS CLAIMS OF PREJUDICE ARE UTTERLY
22        CONCLUSORY.**

23        Defendants fail to identify a single fact that exemplifies the supposed undue
24  prejudice they would suffer through the introduction of this evidence (Mot. at 11),
25  particularly where they will be able to conduct cross-examinations and argue the
26  weight of this evidence to the jury.

27        For the foregoing reasons, Plaintiffs respectfully request that the Court deny
28  Defendants' Motion *in Limine* No. 1 its entirety.

1

2          Dated:  December 9, 2019          GAW | POE LLP

3

4                                           By:  _____

5                                                Mark Poe
                                                 Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           PLTFS.' OPP. TO DEFS.'
                                           MOTION *IN LIMINE* NO. 1
                                           CASE NO. 2:18-CV-06809-MWF-MRW