MARK POE (S.B. #223714)
  mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
SAMUEL SONG (S.B. #245007)
  ssong@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. INTERNATIONAL CORP., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PRESTIGE BRAND HOLDINGS, INC., et al.,<br><br>                    Defendants. | Case No. 2:18-cv-06809-MWF-MRW<br><br>**PLAINTIFFS' STATEMENT REGARDING DISPUTED VERDICT FORMS AND OBJECTIONS TO DEFENDANTS' PROPOSED SPECIAL VERDICT FORM**<br><br>Pretrial Conf.:    Dec. 23, 2019<br>Time:              11:00 a.m.<br>Time:              8:30 a.m.<br>Courtroom:         First Street Courthouse, Courtroom 5A, 5th Floor<br>Trial Date:        Jan. 21, 2020 |

Pursuant to Section I of the Court's Order Re Jury Trial (ECF No. 55 at 1), Plaintiffs hereby submit their statement regarding the parties' disputed verdict forms and objections to Defendants' Proposed Special Verdict Form.

## I.    STATEMENT REGARDING DISPUTED VERDICT FORMS

Plaintiffs propose a five-page jury verdict form, which asks the jury to decide as to each of the three claims that will be tried:  (1) whether Defendants are liable to each Plaintiff, (2) whether each Plaintiff suffered antitrust injury as a result of that violation, and (3) the amount of each Plaintiff's damages.  Plaintiffs' proposed form focuses the jury on the ultimate questions, only separating the question of Defendants' liability from that of Plaintiffs' injury because once liability is established, Plaintiffs are entitled to injunction against the conduct.  *See Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1042 (9th Cir. 1987) ("Under section 2(a), all that is required to establish illegal price discrimination is proof that competitive injury *may* result.  Once such a showing is made, the plaintiff is entitled to an injunction preventing defendant from engaging in the anticompetitive conduct."); *Mad Rhino, Inc. v. Best Buy Co.*, No. 03-CV-5604-GPS-AJWX, 2008 WL 8760854, at *5 (C.D. Cal. Jan. 14, 2008) ("a demand for injunctive relief, in connection with suppliers' alleged violation of Section 2(d) of Robinson–Patman Act, did not implicate injury-in-fact requirement imposed by the Clayton Act"); Cal. Bus. & Prof. Code § 17082 ("In any action under this chapter, it is not necessary to allege or prove actual damages or the threat thereof, or actual injury or the threat thereof, to the plaintiff.").

In contrast, Defendants propose a special verdict form that spans 151 pages and contains 369 separate questions, many with subparts.  In many combined decades of experience, Plaintiffs have never seen such a thing, nor can they find any precedent for such a thing in the caselaw.

The Court has "complete discretion over whether to have the jury return a special verdict or a general verdict," *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir.

PLAINTIFFS' STATEMENT RE: DISPUTED
VERDICT FORMS
CASE 2:18-CV-06809-MWF-MRW

1991), and should exercise that discretion to reject Defendants' proposed special verdict form. *See Ling Nan Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 186 (2d Cir. 2010) ("appellate courts rarely—if ever—vacate for failure to use a special verdict form").

As an initial matter, Defendants' proposed use of a "Special Verdict Form" is improper and misunderstands what a special verdict is, where they have simultaneously proposed lengthy and complex jury instructions. As the Ninth Circuit has explained, when a *general* verdict is used, "the court must often provide a very long and detailed explanation of the law" to "help the jury reach a general verdict" finding or not finding liability and assessing damages. *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991). In contrast, "[a] special verdict consists of a list of interrogatories that calls for findings of fact," to which the judge then applies the law. *Id.*; *see also Denny v. Ford Motor Co.*, 42 F.3d 106, 111 (2d Cir. 1994) ("The paradigm of a Rule 49(a) verdict is a series of questions of adjudicative fact to be answered by the jury. Based on these answers, the court draws the proper legal conclusions and enters an appropriate judgment."). Because "special verdicts compel the jury to focus exclusively on its fact-finding role," "[t]his arrangement permits the judgment to give a minimum of legal instruction to the jurors." *Floyd v. Laws*, 929 F.2d at 1395. Here, Defendants seek to compel the jury to pour through a "very long and detailed explanation of the law," *id.*, and then to answer an even longer list of questions making special findings on each issue of fact. Needless to say which side will benefit when "lay jurors are … left confused and befuddled by the court's instructions," *id.*, only to then have to apply that law and answer 369 interrogatories. Defendants should not be permitted to have it both ways.

Furthermore, Defendants' 369 interrogatories pose an astronomically high risk of inconsistent findings by the jury. For instance, by sheer oversight or exhaustion, one or more of the jury's 369 answers may "violate its instructions,"

"be inconsistent with a determination of liability," or "be legally irreconcilable with each other or with a legal conclusion." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1037 (9th Cir. 2003).

Defendants' 151-page special verdict form also imposes an incredible burden on the Court and its staff. Indeed, even reading Defendants' form into the record at the conclusion of the case would require many hours of the Courtroom Deputy's time and multiple breaks (assuming jurors have the stamina to make it through page 151, or even 50).

## II.   PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PROPOSED SPECIAL VERDICT FORM

### A.   Timeliness Objection

Plaintiffs object to Defendants' Proposed Special Verdict Form in its entirety because it was not timely served pursuant to Section II.C.1 of the Court's Jury Trial Order. (*See* ECF No. 55 at 7.) That rule provides that "the parties *shall* exchange their respective … special verdict forms" within "[f]ourteen days before the Local Rule 16-2 meeting"—i.e., by October 30, 2019.[1] (*Id.* (emphasis added).) Defendants, however, did not serve their proposed verdict form until November 7, over a week late. Defendants also failed to serve any objections to Plaintiffs' proposed verdict form (which was timely served on October 30). The Court's Jury Trial Order required that Defendants "serve objections to the [Plaintiffs'] … verdict form[]" within "[t]en days prior to the Local Rule 16-2 meeting"—i.e., by November 3, 2019.[2] After ignoring that deadline, Defendants simply served their late proposed verdict form on November 7, without even mentioning (let alone serving) any objections to Plaintiffs' proposed verdict

---

[1] The L.R. 16-2 meeting of counsel is required "[a]t least forty (40) days before" the December 23, 2019 Final Pretrial Conference—i.e., November 13, 2019. (*See* ECF No. 55 at 2.) Fourteen days before that date was October 30, 2019.

[2] Having failed to timely serve their proposed verdict form on October 30, Defendants made it impossible for Plaintiffs to comply with this deadline.

PLAINTIFFS' STATEMENT RE: DISPUTED
VERDICT FORMS
CASE 2:18-CV-06809-MWF-MRW

1  form.  (*See* ECF No. 207-2 at 3-4 (email from Sean Patterson dated November 7,

2  2019 at p. 2-3).)  Accordingly, Defendants have waived their own proposed

3  verdict form, as well as any objections to Plaintiffs' proposed verdict form.  (*See*

4  ECF No. 55 at 7 ("The Court expects *strict compliance* with Local Rule 16-2.")

5  (emphasis added); *see also id.* at 5 ("Failure to comply with these requirements

6  may result in … other sanctions."); *see also* ECF No. 207 (Plaintiffs' Opp. to

7  Defs.' Retroactive Mot. to Extend Time).)

8      If the Court nonetheless considers Defendants' late proposed verdict form,

9  Plaintiffs also object on the following grounds.

10     **B.    Specific Objections**

11     Plaintiffs further object to each of Defendants' numbered questions

12  discussed below (as to each Plaintiff for which it is asked).  *See Floyd*, 929 F.2d at

13  1395 (explaining that court has "complete discretion" over "the form of the special

14  verdict, provided the questions asked are 'adequate to obtain a jury determination

15  of the factual issues essential to judgment'") (citation omitted).

16

17     1.    "Did [Plaintiff] prove by a preponderance of the evidence that it was

18  in "actual competition" with one or more of the alleged favored purchasers (i.e., a

19  specific Costco Business Center location, Sam's Club, or Select Corporation) for

20  the reselling of Clear Eyes® to the same retail customers?"

21     This question fails to accurately present the material issues in the case

22  raised by the evidence, by asking if Plaintiffs and the favored purchasers sold

23  Clear Eyes to the same "retail" customers.  Undisputed evidence shows that

24  Plaintiffs and the favored purchasers also sold Clear Eyes to both retail and

25  wholesale customers.  *See Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 377

26  (7th Cir. 1996) ("special verdict questions must accurately present to the jury all

27  the material issues in the case that were raised by the pleadings and the

28  evidence").  Additionally, there is no authority holding that an RPA plaintiff must

PLAINTIFFS' STATEMENT RE: DISPUTED
VERDICT FORMS
CASE 2:18-CV-06809-MWF-MRW

1    show actual competition with a "specific … location" of a favored purchaser.

2

3        2.    "Did [Plaintiff] prove by a preponderance of the evidence that

4    Defendants discriminated in net price in sales of Clear Eyes® between [Plaintiff]

5    and any alleged favored purchasers with which [Plaintiff] is in competition, by

6    charging [Plaintiff] a higher net price than it charged the alleged favored

7    purchaser(s) at about the same time?"

8        This question should not be asked because it is undisputed that Defendants

9    charged Plaintiffs higher net prices than they charged Costco Business Center,

10    Sam's Club, and Select Corporation.  *See Bularz*, 93 F.3d at 377 ("special verdict

11    questions must accurately present to the jury all the material issues in the case that

12    were raised by the pleadings and the evidence").

13

14        3.    "On those occasions when Defendants charged a different price to

15    [Plaintiff] and a favored purchaser on sales of Clear Eyes® that occurred at about

16    the same time, what was the net price charged to [Plaintiff]?"

17        This question should not be asked because it is undisputed that Defendants

18    charged Plaintiffs higher net prices than they charged the favored purchasers.  *See*

19    *Bularz*, 93 F.3d at 377 ("special verdict questions must accurately present to the

20    jury all the material issues in the case that were raised by the pleadings and the

21    evidence").  There is also no requirement that the jury determine the dollar amount

22    of the net price (as opposed to determining the fact of price discrimination).  The

23    question is also vague and ambiguous because it purports to require the jury to list

24    one "net price" for a relevant period spanning seven years.  *U.S. Fire Ins. Co. v.*

25    *Pressed Steel Tank Co.*, 852 F.2d 313, 318 (7th Cir. 1988) (holding that "form of

26    the special verdict is so ambiguous as to constitute an abuse of the district court's

27    discretion").

28

4.     "On those occasions when Defendants charged a different price to [Plaintiff] and a favored purchaser in sales of Clear Eyes® that occurred at about the same time, what was the net price charged to the favored purchaser?"

This question should not be asked because it is undisputed that Defendants charged Plaintiffs higher net prices than they charged the favored purchasers. *See Bularz*, 93 F.3d at 377 ("special verdict questions must accurately present to the jury all the material issues in the case that were raised by the pleadings and the evidence"). There is also no requirement that the jury determine the dollar amount of the net price (as opposed to determining the fact of price discrimination). The question is also vague and ambiguous because it purports to require the jury to list one "net price" for a relevant period spanning seven years and for three separate favored purchasers. *U.S. Fire Ins. Co.*, 852 F.2d at 318 (holding that "form of the special verdict is so ambiguous as to constitute an abuse of the district court's discretion").

5.     "Did [Plaintiff] prove that the equivalent net price of Clear Eyes® that a favored purchaser paid during the relevant time was not "functionally or practically available" to [Plaintiff]?"

This question should not be asked because there is no evidence that any Plaintiff knew about the favored pricing, discounts, rebates, allowances, and other payments made to Costco Business Center, Sam's Club, and Select Corporation, let alone that those terms were functionally or practically available to Plaintiffs. *See Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745, 752 (1st Cir. 1994) ("And, we do not see how ordinarily one could say that a seller has made favored treatment "available" to a disfavored customer if the disfavored customer *does not know* about the favored treatment."); *Tri-Valley Packing Ass'n v. F.T.C.*, 329 F.2d 694, 703-04 (9th Cir. 1964) (for functional availability doctrine to apply, the prices must have been "equally available" to

Plaintiffs and allowed them to "buy[] at the same low prices" as the favored purchasers").  Moreover, Defendants have repeatedly admitted that the promotional program offered to Plaintiffs could not compete with the promotions offered to the favored purchasers (*see, e.g.*, Exs. 33, 91), and almost always required large minimum purchases of the product at issue and/or other of Defendants' products.  *See Bularz*, 93 F.3d at 377 ("special verdict questions must accurately present to the jury all the material issues in the case that were raised by the pleadings and the evidence").

6.     "Did [Plaintiff] prove by a preponderance of the evidence that it suffered "competitive injury" by showing there was a substantial difference in net price between sales by Defendants to [Plaintiff] and sales by Defendants to a favored purchaser over a significant period of time?"

This question misstates the law by purporting to require each Plaintiff to prove that it "suffered 'competitive injury.'"  As the Ninth Circuit has held, an RPA plaintiff is required "to show **only** 'a reasonable possibility that a price differential **may** harm competition'"—not that it "suffered 'competitive injury.'"  *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1040–41 (9th Cir. 1987), *aff'd*, 496 U.S. 543 (1990) (quoting *Falls City Indus., Inc. v. Vanco Beverages, Inc.*, 460 U.S. 428, 434–35 (1983) (emphasis added).

7.     "Did [Plaintiff] prove by a preponderance of the evidence that it suffered "competitive injury" by showing direct evidence that more than an insignificant number of [Plaintiff]'s customers were diverted to a favored purchaser because Defendants discriminated in net price between [Plaintiff] and a favored purchaser in sales of Clear Eyes® that occurred at about the same time?"

This question misstates the law by stating that each Plaintiff is required to prove that it "suffered 'competitive injury.'"  As the Ninth Circuit has held, an

RPA plaintiff is required "to show **only** 'a reasonable possibility that a price differential **may** harm competition'"—not that it "suffered 'competitive injury.'" *Hasbrouck*, 842 F.2d at 1040–41 (quoting *Falls City*, 460 U.S. at 434–35. This question further misstates the law by stating that Plaintiffs must show "more than an insignificant number … of customers" were diverted. The Supreme Court has held that competitive injury may be established through evidence of "diversion of sales or profits [not just "customers"] from a disfavored purchaser to a favored purchaser." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006) (citing *FTC v. Morton Salt Co.*, 334 U.S. 37, 49-51 (1948)).

8.   "To the extent [Plaintiff] suffered any "competitive injury," did Defendants prove by a preponderance of the evidence that [Plaintiff]'s injury was caused by some factor or combination of factors other than Defendants discriminating in net price between [Plaintiff] and the favored purchaser(s) in sales of Clear Eyes® that occurred at about the same time?"

This question misstates the law by suggesting that each Plaintiff is required to prove that it "suffered any competitive injury." As the Ninth Circuit has held, an RPA plaintiff is required "to show **only** 'a reasonable possibility that a price differential **may** harm competition'"—not that it "suffered 'competitive injury.'" *Hasbrouck*, 842 F.2d at 1040–41 (quoting *Falls City*, 460 U.S. at 434–35.

9.   "Did Defendants show that the favored purchaser(s) performed promotion, marketing, advertising or administration services in connection with sales of Clear Eyes®[?]"

This question should not be asked because functional discounts are irrelevant in this lawsuit. *See Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1038-39 (9th Cir. 1987) (Manufacturers are permitted to use price differentials, commonly known as wholesale or **functional discounts**, to compensate **certain classes of**

1    ***buyers*** for the distributional services they perform. [citations]  For this reason,

2    goods may generally be sold to ***wholesalers*** at a lower price than that charged to

3    ***retailers***.") (emphasis added); *see also Texaco v. Hasbrouck*, 496 U.S. 543 (1990)

4    (functional discounts "must be 'based on its [the purchaser's] ***role*** in the supplier's

5    distributive system'") (emphasis added).  In all events, there is no evidence that

6    the favored purchasers actually performed any services for the discounts, rebates,

7    and promotional allowances they received (and that were not separately

8    compensated such as advertising payments), or any evidence showing the actual

9    value of any purported service performed by any favored purchaser.  *See Bularz*,

10    93 F.3d at 377 ("special verdict questions must accurately present to the jury all

11    the material issues in the case that were raised by the pleadings and the

12    evidence").

13

14         10.    "Did Defendants show that the net price paid by (or net discount

15    received by) the favored purchaser included a reasonable reimbursement for the

16    services it performed in connection with sales of Clear Eyes®[?]"

17         This question should not be asked because functional discounts are

18    irrelevant in this lawsuit.  *See Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1038-39

19    (9th Cir. 1987) (Manufacturers are permitted to use price differentials, commonly

20    known as wholesale or ***functional discounts***, to compensate ***certain classes of***

21    ***buyers*** for the distributional services they perform. [citations]  For this reason,

22    goods may generally be sold to ***wholesalers*** at a lower price than that charged to

23    ***retailers***.") (emphasis added); *see also Texaco v. Hasbrouck*, 496 U.S. 543 (1990)

24    (functional discounts "must be 'based on its [the purchaser's] ***role*** in the supplier's

25    distributive system'") (emphasis added).  In all events, there is no evidence that

26    the favored purchasers actually performed any services for the discounts, rebates,

27    and promotional allowances they received (and that were not separately

28    compensated such as advertising payments), or any evidence showing the actual

value of any purported service performed by any favored purchaser. *See Bularz*, 93 F.3d at 377 ("special verdict questions must accurately present to the jury all the material issues in the case that were raised by the pleadings and the evidence").

11.    "Did [Plaintiff] prove that Defendants' lower net prices to the favored purchaser for sales of Clear Eyes® were not justified as "functional discounts"?"

This question should not be asked because functional discounts are irrelevant in this lawsuit. *See Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1038-39 (9th Cir. 1987) (Manufacturers are permitted to use price differentials, commonly known as wholesale or ***functional discounts***, to compensate ***certain classes of buyers*** for the distributional services they perform. [citations]  For this reason, goods may generally be sold to ***wholesalers*** at a lower price than that charged to ***retailers***.") (emphasis added); *see also Texaco v. Hasbrouck*, 496 U.S. 543 (1990) (functional discounts "must be 'based on its [the purchaser's] ***role*** in the supplier's distributive system'") (emphasis added).  In all events, there is no evidence that the favored purchasers actually performed any services for the discounts, rebates, and promotional allowances they received (and that were not separately compensated such as advertising payments), or any evidence showing the actual value of any purported service performed by any favored purchaser. *See Bularz*, 93 F.3d at 377 ("special verdict questions must accurately present to the jury all the material issues in the case that were raised by the pleadings and the evidence").

12.    "Did [Plaintiff] establish by a preponderance of the evidence that it was in fact injured as a result of Defendants' alleged violation of Robinson Patman Act § 2(a)?"

Plaintiffs object to asking questions 12, 13, and 14 as separate questions, as

- 10 -

they all pertain to the central issue of whether Plaintiffs are entitled to recover damages resulting from Defendants' alleged price discrimination.  Separating them into separate questions unnecessarily increases the number of questions the jury must answer.

13.    "Did [Plaintiff] establish by a preponderance of the evidence that Defendants' alleged conduct was a "material" cause of [Plaintiff]'s injury?"

Plaintiffs object to asking questions 12, 13, and 14 as separate questions, as they all pertain to the central issue of whether Plaintiffs are entitled to recover damages resulting from Defendants' alleged price discrimination.  Separating them into separate questions unnecessarily increases the number of questions the jury must answer.

14.    "Did [Plaintiff] establish by a preponderance of the evidence that its injury due to Defendants' alleged conduct is an injury of the type that the antitrust laws were intended to prevent?"

Plaintiffs object to asking questions 12, 13, and 14 as separate questions, as they all pertain to the central issue of whether Plaintiffs are entitled to recover damages resulting from Defendants' alleged price discrimination.  Separating them into separate questions unnecessarily increases the number of questions the jury must answer.

15.    "Did [Plaintiff] provide a reasonable basis for determining the antitrust damages to its business or property, if any, caused by Defendants' alleged violation of Robinson Patman Act § 2(a)?"

This question is unnecessary and is designed to make it more difficult and onerous for the jury to find in favor of Plaintiffs.  If the jury awards damages to Plaintiffs that presupposes that the jury found a reasonable basis for determining

damages.  This question is also duplicative of question 16, which repeats the "fair and reasonable" language.

16.    "What do you determine to be a fair and reasonable dollar calculation of the antitrust damages to [Plaintiff's]'s business or property, if any, caused by Defendants' alleged violation of Robinson Patman Act § 2(a)?"

This "fair and reasonable" language is unnecessary and is designed to make it more difficult and onerous for the jury to find in favor of Plaintiffs.  That language is also contained in question 15, and should in no event, be repeated twice.  As Plaintiffs propose, the question should simply ask the jury to state the amount of damages proved by a preponderance of the evidence.

17.    "Did Defendants prove by a preponderance of the evidence that [Plaintiff] failed to use reasonable efforts to mitigate its antitrust damages caused by Defendants' alleged violation Robinson Patman Act § 2(a)?"

The question improperly instructs the jury to "Proceed to Question No. 18" even if it answers "No."

18.    "What do you determine to be the amount by which [Plaintiff]'s antitrust damages would have been mitigated if it had used reasonable efforts to mitigate its damages caused by Defendants' alleged violation of Robinson Patman Act § 2(a)?"

Because question 17 instructs the jury to proceed to this question even if it answers "No" to question 17, the jury may be confused and misled into believing that it must enter a dollar amount.

19.    "Did [Plaintiff] prove by a preponderance of the evidence that it was in "actual competition" with one or more favored purchasers for the reselling of Clear Eyes® to the same retail customers?"

This question fails to accurately present the material issues in the case raised by the evidence by asking if Plaintiffs and the favored purchasers sold Clear Eyes to the same "retail" customers.  Undisputed evidence shows that Plaintiffs and the favored purchasers sold Clear Eyes to both retail and wholesale customers. *See Bularz*, 93 F.3d at 377 ("special verdict questions must accurately present to the jury all the material issues in the case that were raised by the pleadings and the evidence").

20.    "Did [Plaintiff] prove by a preponderance of the evidence that Defendants made or contracted to make some payment or allowance to a favored purchaser for the furnishing of advertising or promotional services in connection with a favored purchaser's resale of Clear Eyes® that Defendants did not offer to L.A. International Corp. on proportionally equal terms?

This question is long and convoluted.  Plaintiffs' proposed verdict form asks essentially the same question in clearer terms:  "Did Plaintiffs prove by a preponderance of the evidence that Defendants violated section 2(d) of the Robinson-Patman Act by providing advertising and promotional support to Costco, Sam's Club, and/or Select Corporation that was not provided to Plaintiffs on proportionally equal terms?"

21.    "Did [Plaintiff] prove by a preponderance of the evidence that it was injured in its business or property by Defendants making or contracting to make some payment or allowance to a favored purchaser for the furnishing of advertising or promotional services in connection with a favored purchaser's

resale of Clear Eyes® that Defendants did not offer to [Plaintiff] on proportionally equal terms?"

This question should not be asked because it improperly states that injury to competition is a required element of Plaintiffs' Section 2(d) claim. The Supreme Court has held, "[u]nlike § 2(a), none of [sections 2(c), (d) or (e)] requires, as proof of a prima facie violation, a showing that the illicit practice has had an injurious or destructive effect on competition." *F.T.C. v. Simplicity Pattern Co.*, 360 U.S. 55, 64-65 (1959). To the extent the question pertains to actual injury, it is duplicative of question 22.

22.    "Did [Plaintiff] establish by a preponderance of the evidence that it was in fact injured as a result of Defendants' alleged violation of Robinson Patman Act § 2(d)?"

Plaintiffs object to asking questions 22, 23, and 24 as separate questions, as they all pertain to the central issue of whether Plaintiffs are entitled to recover damages resulting from Defendants' alleged violation of Section 2(d). Separating them into separate questions unnecessarily increases the number of questions the jury must answer.

23.    "Did [Plaintiff] establish by a preponderance of the evidence that Defendants' alleged conduct was a "material" cause of [Plaintiff]'s injury?"

Plaintiffs object to asking questions 22, 23, and 24 as separate questions, as they all pertain to the central issue of whether Plaintiffs are entitled to recover damages resulting from Defendants' alleged violation of Section 2(d). Separating them into separate questions unnecessarily increases the number of questions the jury must answer.

24.    "Did [Plaintiff] establish by a preponderance of the evidence that its injury due to Defendants' alleged conduct is an injury of the type that the antitrust laws were intended to prevent?"

Plaintiffs object to asking questions 22, 23, and 24 as separate questions, as they all pertain to the central issue of whether Plaintiffs are entitled to recover damages resulting from Defendants' alleged violation of Section 2(d).  Separating them into separate questions unnecessarily increases the number of questions the jury must answer.

25.    "Did [Plaintiff] provide a reasonable basis for determining the antitrust damages to its business or property, if any, caused by Defendants' alleged violation of Robinson Patman Act § 2(d)?"

This question is unnecessary and is designed to make it more difficult and onerous for the jury to find in favor of Plaintiffs.  If the jury awards damages to Plaintiffs that presupposes that the jury found a reasonable basis for determining damages.  This question is also duplicative of question 26, which repeats the "fair and reasonable" language.

26.    "What do you determine to be a fair and reasonable dollar calculation of the antitrust damages to [Plaintiff]'s business or property, if any, caused by Defendants' alleged violation of Robinson Patman Act § 2(d)?"

The "fair and reasonable" language is unnecessary and is designed to make it more difficult and onerous for the jury to find in favor of Plaintiffs.  That language is also contained in question 25, and should in no event, be repeated twice.  As Plaintiffs propose, the question should simply ask the jury to state the amount of damages proved by a preponderance of the evidence.

27. "Did Defendants prove by a preponderance of the evidence that [Plaintiff] failed to use reasonable efforts to mitigate its antitrust damages caused by Defendants' alleged violation of Robinson Patman Act § 2(d)?"

This question improperly instructs the jury to "Proceed to Question No. 28" even if it answers "No."

28. "What do you determine to be the amount by which [Plaintiff]'s antitrust damages would have been mitigated if it had used reasonable efforts to mitigate its damages caused by Defendants' alleged violation of Robinson Patman Act § 2(d)?"

Because question 27 instructs the jury to proceed to this question even if it answers "No" to question 27, the jury may be confused and misled into believing that it must enter a dollar amount.

29. "Did [Plaintiff] prove by a preponderance of the evidence that Defendants gave "secret" rebates or allowances to favored purchasers that Defendants concealed from or did not disclose to other buyers?"

This question lists only "rebates or allowances" and fails to include other categories of allegedly "secret" terms provided to the favored purchasers (e.g., unearned discounts, services, or privileges).

30. "Did [Plaintiff] prove by a preponderance of the evidence that Defendants gave "secret" rebates or allowances to a favored purchaser that were not given to other buyers?"

This question lists only "rebates or allowances" and fails to include other categories of allegedly "secret" terms provided to the favored purchasers (e.g., unearned discounts, services, or privileges).

31.    "Did [Plaintiff] prove by a preponderance of the evidence that it was substantially harmed by Defendants' "secret" rebates or allowances to a favored purchaser that were not given to other buyers?"

This question lists only "rebates or allowances" and fails to include other categories of allegedly "secret" terms provided to the favored purchasers (e.g., unearned discounts, services, or privileges).  It also misstates the law by stating that Plaintiffs must prove they were "substantially" harmed.  *See Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego*, 16 Cal. App. 4th 202, 212 (1993) ("[T]here are three elements to a violation of section 17045.  First, there must be a 'secret' allowance of an 'unearned' discount.  Second, there must be 'injury' to a competitor.  Third, the allowance must tend to destroy competition.").

32.    "Did [Plaintiff] prove by a preponderance of the evidence that Defendants' "secret" rebates or allowances to a favored purchaser that were not given to other buyers had a tendency to destroy competition?"

This question lists only "rebates or allowances" and fails to include other categories of allegedly "secret" terms provided to the favored purchasers (e.g., unearned discounts, services, or privileges).

33.    "Did [Plaintiff] prove by a preponderance of the evidence that Defendants' "secret" rebates or allowances to a favored purchaser that were not given to [Plaintiff] were a substantial factor in causing the harm to [Plaintiff]?"

This question lists only "rebates or allowances" and fails to include other categories of allegedly "secret" terms provided to the favored purchasers (e.g., unearned discounts, services, or privileges).

34.    "Did Defendants prove that it created different classes of customers, such as convenience store wholesalers, club stores and kit packers?"

1   This question improperly instructs the jury to "Proceed to Question No. 35"

2   even if it answers "No."

3

4   35.    "Did Defendants prove that the different classes of customers it

5   created performed different functions and that the customers assumed the risk,

6   investment, and costs involved with those functions?"

7   Because question 34 instructs the jury to proceed to this question even if it

8   answers "No" to question 34, the jury may be confused and misled into believing

9   that it must answer this question.  This question also improperly instructs the jury

10  to "Proceed to Question No. 36" even if it answers "No."

11

12  36.    "Did Defendants prove that the difference in net price, rebates,

13  discounts, services, or privileges for Clear Eyes® given to the favored purchasers

14  were only for those sales where the favored purchasers performed the functions of

15  a club store or kit packer?"

16  Because question 35 instructs the jury to proceed to this question even if it

17  answers "No" to question 35, the jury may be confused and misled into believing

18  that it must answer this question.  This question also improperly instructs the jury

19  to "Proceed to Question No. 37" even if it answers "No."

20

21  37.    "Did Defendants prove that any difference in net price charged

22  between [Plaintiff] and the favored purchasers was reasonably related to the value

23  of their respective class functions?"

24  Because question 36 instructs the jury to proceed to this question even if it

25  answers "No" to question 36, the jury may be confused and misled into believing

26  that it must answer this question.  This question also improperly instructs the jury

27  to "Proceed to Question No. 38" even if it answers "No."  This question also

28  improperly asks if "any" difference in net price (rather than "the" difference in net

PLAINTIFFS' STATEMENT RE: DISPUTED
VERDICT FORMS
CASE 2:18-CV-06809-MWF-MRW

price) was reasonably related to the value of such function, and could be misconstrued as providing a complete defense even if the jury were to determine that only a fraction of the difference was reasonably related to the value of the purported function.

38.    "Did [Plaintiff] provide a reasonable basis for determining the damages to its business or property, if any, caused by Defendants' alleged violation of the Unfair Practices Act?"

This question is unnecessary and is designed to make it more difficult and onerous for the jury to find in favor of Plaintiffs.  If the jury awards damages to Plaintiffs that presupposes that the jury found a reasonable basis for determining damages.  This question is also duplicative of question 39, which repeats the "fair and reasonable" language.

39.    "What do you determine to be a fair and reasonable dollar calculation of the damages to [Plaintiff]'s business or property, if any, caused by Defendants' alleged violation of the Unfair Practices Act?"

The "fair and reasonable" language is unnecessary and is designed to make it more difficult and onerous for the jury to find in favor of Plaintiffs.  That language is also contained in question 38, and should in no event, be repeated twice.  As Plaintiffs propose, the question should simply ask the jury to state the amount of damages proved by a preponderance of the evidence.

40.    "Did Defendants prove by a preponderance of the evidence that [Plaintiff] failed to use reasonable efforts to mitigate its damages caused by Defendants' alleged violation of the Unfair Practices Act?"

This question improperly instructs the jury to "Proceed to Question No. 41" even if it answers "No."

1

2          41.    "What do you determine to be the amount by which [Plaintiff]'s

3   damages would have been mitigated if it had used reasonable efforts to mitigate its

4   damages caused by Defendants' alleged violation of the Unfair Practices Act?

5          Because question 40 instructs the jury to proceed to this question even if it

6   answers "No" to question 40, the jury may be confused and misled into believing

7   that it must enter a dollar amount.

8

9          Finally, Plaintiffs expressly reserve their right to supplement and amend

10  their objections to Defendants' proposed verdict form.

11

12

13  Dated:  December 9, 2019              GAW | POE LLP

14

15                                 By:  _____

16                                       Mark Poe
                                         Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28