UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **18-6809-MWF (MRWx)**                    **Date:  May 20, 2024**

Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

Present:   <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

           Deputy Clerk:                              Court Reporter:
           Rita Sanchez                               Amy Diaz

           Attorneys Present for Plaintiffs:    Attorneys Present for Defendants:
           None Present                              None Present

**Proceedings (In Chambers):**    ORDER RE: PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION [345]; DEFENDANTS' MOTION FOR A NEW TRIAL [347]

Before the Court are two motions:

The first is Plaintiffs L.A. International Corporation et al.'s Motion for Permanent Injunction (the "Injunction Motion"), filed on January 29, 2024. (Docket No. 345).  In support of the Injunction Motion, Plaintiffs also lodged their Proposed Findings of Fact and Conclusions of Law (the "Proposed FF&CL").  (Docket No. 346). Defendants Prestige Consumer Healthcare, Inc. (f/k/a Prestige Brands, Inc.) and Medtech Products Inc. filed an Opposition to the Injunction Motion and Objections to the Proposed FF&CL on February 12, 2024.  (Docket Nos. 348, 349).  Plaintiffs filed a Reply on February 19, 2024.  (Docket No. 350).

The second is Defendants' Motion for a New Trial (the "Rule 59 Motion"), filed on February 12, 2024.  (Docket No. 347).  Plaintiffs filed an Opposition on February 26, 2024.  (Docket No. 351).  Defendants filed a Reply on March 4, 2024.  (Docket No. 353).  Defendants also filed a Request for Judicial Notice ("RJN").  (Docket No. 353-1).

The Court has read and considered the papers on the motions and held a hearing on **March 18, 2024**.

For the reasons discussed below, the Court rules as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. **18-6809-MWF (MRWx)**                    Date:  **May 20, 2024**
Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

- The Rule 59 Motion is **DENIED**.  The Court did not err in instructing the jury on any of the grounds asserted by Defendants.

- The Injunction Motion is **GRANTED** *in part*.  Based on the jury's verdict and the Court's consideration of the equitable factors, injunctive relief is warranted.  However, the Court declines to enter an injunction requiring Defendants to fairly allocate limited quantities of Clear Eyes Redness Relief brand eye drops ("Clear Eyes") as doing so would lack a reasonable relation to the unlawful practices found by the jury.

This Order is filed contemporaneously with a separate findings of fact and conclusions of law (the "FF&CL").

I.    **BACKGROUND**

The parties are by now quite familiar with the factual background of this action, which is fully set forth in the MSJ Order (Docket No. 176) and, of course, was established at trial.  Therefore, the Court will not repeat all of those facts here but incorporates by reference the factual and procedural background from the MSJ Order.

Plaintiffs are nine wholesale businesses that sell, among other products, Clear Eyes.  Defendants Prestige Consumer Healthcare, Inc. ("Prestige") and Medtech Products Inc. sell and distribute Clear Eyes.

On August 8, 2018, Plaintiffs filed this action against Defendants for unlawful price discrimination and unfair competition.  According to Plaintiffs, Defendants was selling Clear Eyes at a lower price to Plaintiffs' competitors, such as Costco Wholesale Corporation and Sam's Club (the "Favored Purchasers").  The First Amended Complaint ("FAC") alleged that Defendants violated (1) Section 2(a) of the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13(a); (2) Section 2(d) of the RPA, 15 U.S.C. § 13(d); (3) the California's Unfair Practices Act ("UPA"), California Business & Professions Code section 17045; and (4) California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200.  (FAC (Docket No. 10) ¶¶ 49–66).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. **18-6809-MWF (MRWx)**                Date:  **May 20, 2024**

Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

Defendants denied these claims on various grounds, arguing that the lower prices they charged the Favored Purchasers were lawful under both federal and state law.  Specifically, Defendants disputed that Plaintiffs and the Favored Purchasers were competitors, that they purchased the same product, and that the price differences had a reasonable probability of harming competition.  Defendants also raised several affirmative defenses, arguing that the lower prices were justified.

The case was submitted to the jury after a six-day trial.  On December 15, 2023, the jury found in favor of Plaintiffs on their RPA Section 2(a) claim and the five California-based Plaintiffs (L.A. International, L.A. Top Distributor, Pitco, U.S. Wholesale, and Value Distributor) on their UPA claim.  (Verdict Form (Docket No. 329)).  Accordingly, the jury awarded the following damages:

| Plaintiff | Section 2(a) Damages | UPA Damages |
|---|---|---|
| AKR | $25,000 | N/A |
| Border Cash & Carry | $0 | N/A |
| Excel Wholesale | $25,000 | N/A |
| L.A. International | $95,000 | $90,000 |
| L.A. Top Distributor | $25,000 | $30,000 |
| Manhattan Wholesalers | $25,000 | N/A |
| Pitco | $30,000 | $75,000 |
| U.S. Wholesale | $25,000 | $5,000 |
| Value Distributor | $100,000 | $130,000 |

(*Id.* at 4, 7).

After receiving the jury's verdict, the Court informed the parties that it would enter judgment after deciding the remaining claim for injunctive relief under Section 2(d), the UPA, and the UCL.

On January 29, 2024, Plaintiffs filed the Injunction Motion.  (Docket No. 345).  Defendants filed the Rule 59 Motion shortly thereafter on February 12, 2024.  (Docket

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:      L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

No. 347).  Because Plaintiffs' Injunction Motion relies on the Court's ruling on
Defendants' Rule 59 Motion, the Court considers them together in this Order.

## II.    REQUEST FOR JUDICIAL NOTICE

Defendants request the Court to take judicial notice of a copy of the certified
transcript of the trial proceedings in *U.S. Wholesale Outlet & Distribution, Inc. et al. v.
Living Essentials, LLC, et al.*, No. 2:18-CV-01077-CBM-E (C.D. Cal.).  (RJN at 2).
Plaintiffs did not oppose the RJN.

Because the Court may take judicial notice of matters of public record, the RJN
is **GRANTED**.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6
(9th Cir. 2006); *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (taking
judicial notice of court records in another case).

## III.   RULE 59 MOTION

Juries perform a vital role in our system of justice, and a jury was
constitutionally required in this action under the Seventh Amendment.  As triers of
fact, jurors become a part of the court itself, and judges are "rarely entitled to disregard
jury verdicts that are supported by substantial evidence."  *Duk v. MGM Grand Hotel,
Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003).  But on occasion, a new trial may be granted
on certain "historically recognized" grounds.  *Zhang v. Am. Gem Seafoods, Inc.*, 339
F.3d 1020, 1035 (9th Cir. 2003); *see also* Fed. R. Civ. P. 59(a) ("A new trial may be
granted . . . for any of the reasons for which new trials have heretofore been granted in
actions at law in the courts of the United States.").

One such historically recognize ground is an error in the jury instructions.
*See Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) ("It is equally
clear that erroneous jury instructions, as well as the failure to give adequate
instructions, are also bases for a new trial.").  Erroneous jury instructions warrant a
new trial only when they "fail to fairly and correctly cover the substance of the
applicable law."  *White v. Ford Motor Co*., 312 F.3d 998, 1012 (9th Cir. 2002).  If an
error is "more probable than not, harmless," the verdict must stand.  *Floyd v. Laws*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024

Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

929 F.2d 1390, 1394 (9th Cir. 1991).  Trial courts thus enjoy "substantial latitude in tailoring the instructions."  *Id.* (internal quotation marks and citation omitted).

Here, Defendants seek a new trial under Rule 59, arguing that the Court erred when instructing the jury on both the Section 2(a) and UPA claims.  Specifically, Defendants contend that, with the benefit of hindsight, it is clear that the Court erred in the following four ways: (1) by omitting the word "substantial" from the jury instructions; (2) by excluding Defendants' proposed instruction on *de minimis* lost sales or lost customers; (3) erroneously instructing the jury on the functional discount defense; and (4) finding that *Volvo Trucks N. Am, Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164 (2006), did not apply to this action.  As explained in the analysis below, the Court disagrees and concludes that a new trial is not warranted.

A.       **The Section 2(a) Jury Instructions**

Defendants contend that the Court committed four errors when instructing the jury on Plaintiffs' Section 2(a) claim.  (Rule 59 Motion at 1–2).  The Court addresses each argument in turn.

**1.  "Substantial" Harm**

Defendants first argue that the Court erred by failing to instruct the jury that Plaintiffs needed to demonstrate ***substantial*** harm to competition.  (*Id.* at 3–7).  In so arguing, Defendants rely on Section 2(a) of the RPA, which provides as follows:

> It shall be unlawful for any person . . . to discriminate in price between different purchasers of commodities . . . where the effect of such discrimination may be ***substantially*** to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them[.].

15 U.S.C. § 13(a) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

When determining this issue of statutory construction at trial, the Court
determined that Section 2(a) was intended to be read in the disjunctive.  The Court
concluded that, although the word "substantially" appears in the text of the statute, it
was not clear whether Congress intended the word "substantially" to also modify the
phrase "to injure, destroy, or prevent competition," which was added after amendment
to the Sherman Act.  (Trial Tr. 12/13/23 (Docket No. 36) at 1232:21–24).  While there
was no controlling authority on this point, the Court reasoned that cases interpreting
Section 2(a) suggest that no showing of substantial harm is required.  (*Id.*).

In *Hasbrouck v. Texaco, Inc.*, for example, the Ninth Circuit acknowledged that
the Supreme Court has interpreted Section 2(a) "as requiring an antitrust plaintiff to
show only 'a reasonable possibility that a price differential may harm competition.'"
842 F.2d 1034, 1041 (9th Cir. 1987) (citing *Falls City Indus., Inc. v. Vanco Beverages,
Inc.*, 460 U.S. 428, 434–35 (1983)), *aff'd on other grounds*, 496 U.S. 543 (1990).  In
affirming the district court, the Ninth Circuit suggested that Section 2(a) should be read
in the disjunctive, noting that the jury was instructed that "plaintiffs needed to
'establish by a preponderance of the evidence that the effect of the discrimination in
price had the reasonable *probability* of substantially lessening competition, or of
injuring or destroying or preventing competition.'"  *Id.* at n.6 (emphasis in original).

In a subsequent case, the Ninth Circuit examined the legislative history of the
RPA.  *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1446 n.18 (9th
Cir. 1995).  The Ninth Circuit noted that, "[w]hile the Clayton Act only proscribed
conduct that may 'substantially lessen competition or tend to create a monopoly,' the
[Robinson-Patman Act] added the following crucial passage: 'or to injure, destroy, or
prevent competition *with any person* who either grants or knowingly receives the
benefit of such discrimination, or with customers of either of them.'"  *Id.* (emphasis in
original).  "The purpose of this passage was to relieve secondary-line plaintiffs—small
retailers who are disfavored by discriminating suppliers—from having to prove harm
to competition marketwide, allowing them instead to impose liability simply by
proving effects to individual competitors."  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

Most recently, the Ninth Circuit held that "[t]o establish secondary-line discrimination, a plaintiff must show that (1) the challenged sales were made in interstate commerce; (2) the items sold were of like grade and quality; (3) the seller discriminated in price between the disfavored and the favored buyer; and (4) the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored purchaser."  *U.S. Wholesale Outlet & Dist., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1134 (9th Cir. 2023) (internal quotation marks and citation omitted).  Nowhere did the Ninth Circuit mention that the injury must be substantial.

In short, controlling authority suggests that Section 2(a) does not require a showing of substantial harm to competition in secondary-line cases.  The American Bar Association Antitrust Section, Model Jury Instructions in Civil Antitrust Cases (the "ABA Model Instructions") are consistent with this interpretation and do not require a plaintiff to show substantial harm to competition.  *See* ABA Model Instructions, Robinson-Patman Act, Seller Liability—Section 2(a), Instruction No. 2, Elements.

Defendants cite several cases in which the Supreme Court and the Ninth Circuit have suggested that Section 2(a) requires substantial harm.  (Rule 59 Motion at 3–4).  For example, in *Volvo*, the Supreme Court noted in dicta that even "if price discrimination between two purchasers existed at all, [the loss of **one** sale of twelve trucks] was not of such magnitude as to affect substantially competition."  *Volvo*, 546 U.S. at 180 (2006).  But this argument ignores that *Volvo* also found no actual price discrimination and or competition between the plaintiff and the favored customer – two prerequisites to finding competitive harm.  *Id.* at 178–81.  Defendants also ignore that *Volvo* omitted the word "substantially" when recounting the elements for secondary-line injury, requiring that a plaintiff need only show that "'the effect of [the price] discrimination may be to injure, destroy, or prevent competition' to the advantage of the favored purchaser."  *Id.* at 176 (citing 15 U.S.C. § 13(a)) (alterations in original).

Defendants further contend that, even if Section 2(a) could be read in the disjunctive, the Court erred in summarizing the law when it instructed the jury that Plaintiffs had to establish "a reasonable possibility that the discriminatory pricing **may**

CIVIL MINUTES—GENERAL                                                    7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. 18-6809-MWF (MRWx)                    Date: May 20, 2024
Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

*harm competition*.”  (Reply at 1 (emphasis added)).  Specifically, Defendants take issue with the fact that the phrase “may harm competition” does not appear in Section 2(a).  (*Id.*).  But the Court was not required to regurgitate the statutory language when instructing the jury.  Indeed, “[s]o long as the instructions on each element of the case are adequate to ensure that the jury fully understands the issues, no particular formulation or wording is necessary.”  *Hasbrouck*, 842 F.2d at 1044.

Finally, even if the Court erred, any error was harmless.  As Defendants concede, the “substantial” requirement does “not require that the injury be all that ‘substantial.’”  (Rule 59 Motion at 6 (citing 14 Areeda & Hovenkamp, Antitrust Law § 2331c (4th ed. 2019)).  The jury’s verdict demonstrates that Defendants’ price discrimination had a substantial impact on Plaintiffs with the exception of Border Cash & Carry.  (*See* Declaration of Mark Poe in Opposition to Rule 59 Motion (Docket No. 351-1) ¶ 5, Ex. D).  *Cf. Volvo*, 546 U.S. at 180 (concluding that the loss of one sale of 12 trucks was insubstantial); *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202 (2d Cir. 2015) (finding that the loss of eighteen customers per year and a 1% decline in transactions was not substantial).

The Court therefore concludes that it did not err in omitting the word “substantially” in the jury instructions.

### 2. *De Minimis* Loss in Sales or Customers

Relying on many of the same arguments regarding the Court’s omission of “substantial” in the jury instructions, Defendants contend that the Court erred by failing to provide a jury instruction on *de minimis* lost sales or lost customers.  (Rule 59 Motion at 7–8).  In so arguing, Defendants contend that a *de minimis* loss in sales or customers is insufficient to demonstrate competitive injury as held in *Olympia Co., Inc. v. Celotex Corp.*, 597 F. Supp. 285 (E.D. La. 1984), *aff’d and remanded*, 771 F.2d 888 (5th Cir. 1985), and *Cash & Henderson Drugs*, 799 F.3d at 210.

The Court finds Defendants’ arguments regarding their *de minimis* defense unpersuasive for many of the same reasons the Court denied their proffered jury instructions regarding “substantial” harm.  Both *Olympia Co.* and *Cash & Henderson*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

*Drugs* relied on the premise that price discrimination must have a substantial effect on competition, which the Court already rejected.  *See Olympia Co.*, 597 F. Supp. At 297 ("[T]he Robinson-Patman Act is only violated where the effect of price discrimination may be to substantially lessen competition.  It is inconceivable that the de minimus [*sic*] price differential at issue could be said to have such a substantial, if any, effect on competition."); *Cash & Henderson Drugs*, 799 F.3d at 210 ("It follows from *Volvo* that if the loss attributable to impaired competition is *de minimis*, then the challenged practice cannot be said to have had a 'substantial' affect [*sic*] on competition.).

Moreover, contrary to the authority cited by Defendants, the Ninth Circuit has previously determined, albeit in an unpublished decision, that even a de minimis impact on competition is sufficient.  There, the Ninth Circuit held that "15 specific examples of lost sales and profits, in conjunction with testimony from several customers stating that they switched to [the Favored Purchasers] because of the price difference" was sufficient to prove competitive injury.  *Chroma Lighting v. GTE Products Corp.*, 111 F.3d 137, 1997 WL 175062, at *2 (9th Cir. 1997) (unpublished).

The Ninth Circuit's decision is also consistent with the ABA Model Instructions, which provide that, if the jury finds that each Plaintiff "actually lost some sales as a result of the alleged price discrimination, then competition has been harmed to that extent."  ABA Model Instructions, Robinson-Patman Act, Seller Liability—Section 2(a), Instruction No. 10, Competitive Injury.  Notably, Defendants do not provide any examples of cases in which the *de minimis* instruction was given to a jury.

Accordingly, the Court did not err in denying jury instructions on the *de minimis* defense.

### 3.  Functional Discounts Defense

Defendants appear to argue that the Court erred in three related ways with respect to their functional discount defense, none of which the Court finds persuasive.  (Rule 59 Motion at 9–11; Rule 59 Reply at 5–8).  The Court addresses each in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

### a.  Jury Instruction

Defendants first contend that the jury did not receive proper instructions on the functional discounts defense.  (Rule 59 Motion at 9–11).

The functional discount defense allows a defendant to avoid liability for price discrimination "when a purchaser performs a service for a supplier."  *U.S. Wholesale*, 89 F.4th at 1138–39 (noting that a functional discount includes, for example, "a reasonable reimbursement for the purchasers' actual marketing functions").  It is ultimately "the plaintiff's burden to prove that the price discrimination was not the result of a lawful functional discount."  *Id.* at 1139 (citing *Hasbrouck*, 496 U.S. at 561).

At trial, the Court provided the following jury instructions on Plaintiffs' Section 2(a) claim:

**INSTRUCTION NO. 17**
**(Robinson-Patman Act—Elements)**

Each Plaintiff's claim of price discrimination under the Robinson-Patman Act is based on comparing the Defendants' sales to that Plaintiff, on the one hand, with the Defendants' sales to other purchasers, Costco Business Center and Sam's Club, on the other.

To prevail on this claim, a Plaintiff must prove, with respect to a set of compared sales, each of the following elements:

1.    The sales being compared were made by the Defendants at about the same time;

2.    the products involved in the sales being compared were of like grade and quality; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

3.    there is a reasonable possibility that the discriminatory pricing may harm competition.  This element includes the concepts of (a) actual competition (Instruction No. 20); (b) competitive injury (Instruction Nos. 21–22); and (c) functional discounts (Instruction No. 23).

These elements are further explained in Instruction Nos. 18–23.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for the Defendants and against the Plaintiff on that Plaintiff's claim under the Robinson-Patman Act.

. . .

**INSTRUCTION NO. 23**
**(Functional Discounts)**

The Defendants claim that their lower prices to the alleged favored purchasers are justified as functional discounts.  "Functional discounts" are discounts given by a seller to a buyer based on the buyer's performance of certain functions for the seller's product.  In this case, the Defendants claim that Costco Business Center and Sam's Club received lower prices because that purchaser performed services, such as brokering sales to their club members, packaging and distributing the product, advertising the product, running promotions and manufacturer rebate tracking for their customers, and/or buying based on yearly commitments that allowed greater predictability in manufacturing.

To show that their lower prices to Costco Business Center or Sam's Club were justified as functional discounts, the Defendants must present proof as to each of the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:      L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

1.  the purchaser actually performed services such as brokering sales to their club members, packaging and distributing the product, advertising and/or buying based on yearly commitments; and

2.  the amount of the discount was a reasonable reimbursement for the actual functions performed by Costco Business Center or Sam's Club.

The Plaintiffs bear the ultimate burden to prove that the Defendants' lower prices were not justified as a functional discount.  If you find that the differences in prices here were functional discounts, then any discriminatory pricing did not have a reasonable possibility of harming competition.

(Jury Instructions (Docket No. 324) at 19, 23).

Defendants contend that these instructions failed to convey that functional discounts served as a complete defense to the Section 2(a) claim.  For example, Defendants point to the Court's characterization of functional discounts as a "concept" in Instruction No. 19 rather than a defense.  (Rule 59 Reply at 6).  However, no reasonable reading of the instructions, taken as a whole, would permit the jury to come to an erroneous understanding of the functional discount defense.  Instruction No. 23 specifically told the jury that "***[i]f you find that the differences in prices here were functional discounts, then any discriminatory pricing did not have a reasonable possibility of harming competition***."  (Jury Instructions at 23 (emphasis added)).  Instruction No. 19 also told the jury that "[i]f you find that the evidence is insufficient to prove any one or more of these elements, then you must find for the Defendants and against the Plaintiff on that Plaintiff's claim under the Robinson-Patman Act."  (*Id.* at 19).  Taken together, Jury Instruction Nos. 17 and 23 made clear that Plaintiffs' failure to prove that the price differences were not justified as a functional discount foreclosed Defendants' liability for the Section 2(a) claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                     Date:  May 20, 2024
Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

As further "evidence" of the Court's error, Defendants point to Jury Note No. 1, in which the jury asked the following question: "Regarding instruction #17 (pg. 19, lines 9–20) does the jury have to be in unanimous agreement on each point and sub-point?"  (Docket No. 325).  But nothing in the question suggests that the jurors were confused about the functional discount defense specifically and its effect on liability.  Even if there were confusion about whether functional discounts were a complete defense to liability, the Court reiterated that the jury was required to "unanimously agree that those three elements [of the RPA] [had] been met" when responding to Jury Note No. 1.  (Trial Tr. 12/15/24 (Docket No. 370) at 1677 8–10).  The Court further explained that the jurors had to address each "subpoint[]" under the third element, including the functional discounts defense, to determine liability.  (*Id.* at 1678:1–6).

Defendants also take issue with the fact that the Court did not provide the following language provided in the ABA Model Instructions: "If you find that the lower prices granted by defendant to [customer A] were justified as a functional discount, then you must return a verdict for defendant on the Robinson-Patman Act claim."  (Motion at 9 (citing ABA Model Instructions, Robinson-Patman Act, Seller Liability—Section 2(a), Instruction No. 11, Functional Discounts)).  However, district courts do not err simply by declining to follow the language provided in model jury instructions.  The Court is only required to provide jury instructions that, when "viewed as a whole . . . fairly and adequately cover the issues presented, correctly state the law, and are not misleading."  *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1081 (9th Cir. 2020).

### b.  Verdict Form

Defendants next contend that the Verdict Form should have included a separate question regarding the functional discount defense.  (Rule 59 Motion at 9–10; Rule 59 Reply at 5–6).

District courts have "broad discretion in deciding whether to send the case to the jury for a special or general verdict."  *United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655*, 51 F.3d 1402, 1408 (9th Cir. 1995).  Despite this broad discretion, "a new trial should be granted when a district court erroneously

---

**CIVIL MINUTES—GENERAL**                                    13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

submits to a jury an issue that should have been decided as a matter of law and the basis of the jury's general verdict is unknown." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1050 (9th Cir. 1998).

On the Verdict Form, the Court included separate questions for each claim of liability, causation, and affirmative defense but declined to include separate questions for each element of Plaintiffs' claims or Defendants' affirmative defenses.  (*See* Verdict Form (Docket No. 329); *see also* Trial Tr. 12/13/24 at 1234:5–22).  In organizing the Verdict Form in this way, the Court sought to summarize the law in a manageable and comprehensible way for the jury, especially in light of the complexities of an antitrust case and Defendants' proposed special verdict form spanning 147 pages and 369 questions, which the Court struck as part of the Rule 16 process.  (*See* Docket Nos. 235, 289).

Consistent with the Court's approach, the Verdict Form did not include a separate question regarding functional discounts because it was not an affirmative defense.  Rather, it was ***Plaintiffs'*** burden to show that the price discrimination could not be justified as a functional discount in order to prove competitive injury – an element of their Section 2(a) claim.  *See U.S. Wholesale*, 89 F.4th at 1139 (explaining that "a functional discount negates the probability of competitive injury, an element of a prima facie case of violation" (internal quotation marks omitted)).

Accordingly, there is no ambiguity as to the jury's finding on the functional discount defense.  Because the jury found in favor of Plaintiffs on their Section 2(a) claim, the jurors necessarily had to unanimously agree that Plaintiffs met their burden of showing that the price differences did not serve as a functional discount.

### c.  Court's Response to Jury Note

Finally, Defendants contend that the Court erred when responding to Juror Note No. 1.  (Rule 59 Motion at 10–11; Rule 59 Reply at 7–8).  However, as already discussed thoroughly above, the Court accurately informed the jury that it was to consider the functional discount defense to determine whether Plaintiffs had shown

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

competitive harm as required under Section 2(a).  (*See* Trial Tr. 12/15/24 at 1677 8-10,
1678:1–6).

Accordingly, the Court did not err when instructing the jury on the functional
discount defense.

### 4.  Applicability of *Volvo*

Finally, Defendants contend that the Court erred in finding that *Volvo* did not
apply to this action.  (Rule 59 Motion at 12–13).  This error, according to Defendants,
foreclosed them from arguing that Plaintiffs and the Favored Purchasers were not in
actual competition because they were not "after the same dollar."  (*Id.*).

Responding to Defendants' argument requires a brief overview of *Volvo* and
subsequent Ninth Circuit caselaw.  In *Volvo*, the plaintiff (a Volvo dealer) alleged that
Volvo engaged in unlawful price discrimination by offering more favorable price
concessions to other dealers.  546 U.S. at 169.  All Volvo dealers, including the
plaintiff, received discounts from Volvo only after they were invited to bid on projects
by their retail customers, who also sought bids from other non-Volvo dealers.  *Id.* at
170.  Volvo would then fulfill the order if and when a Volvo dealer won a bid.  *Id.* at
179–80.  Based on these facts, the Supreme Court held that the plaintiff and other
Volvo dealers were not "different purchasers" as defined in Section 2(a) because only
one dealer (the winning bidder) could make a purchase on behalf of a retail customer.
*Id.* at 180.  In so holding, the Supreme Court declined to "permit an inference of
competitive injury" to the facts presented because the bidding process did not fall
under the typical "chainstore paradigm" where the favored purchaser is a chainstore or
large department store.  *Id.* at 178.

The Ninth Circuit recently addressed *Volvo*'s applicability to secondary-line
cases and the test for determining whether customers are "competing" within the
meaning of Section 2(d).  In *U.S. Wholesale*, the Ninth Circuit held that two customers
are in competition under the meaning of Section 2(d) if "(1) one customer has outlets
in geographical proximity to those of the other; (2) the two customers purchased goods
of the same grade and quality from the seller within approximately the same period of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:      L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

time; and (3) the two customers are operating on a particular functional level such as wholesaling or retailing."  89 F.4th at 1142 (internal quotation marks and citation omitted).  In so holding, the Ninth Circuit concluded that "potential operational differences" and "whether one business lost buyers to another" are irrelevant to the analysis because generally "two customers in the same geographic area are competing for resales to the same buyer or group of buyers," except in the narrow factual circumstances presented in *Volvo*.  *Id.* at 1143–44, 1147.

Prior to trial, the Court determined that *U.S. Wholesale* – not *Volvo* – applied to this action.  (Docket No. 293).  The Court reasoned that this action involved facts akin to "'chainstore paradigm' case, where large chain stores [the favored buyers, such as Costco] were competing with small businesses [Plaintiffs] for buyers."  (*Id.* at 2 (citing *U.S. Wholesale*, 89 F.4th at 1144)).

Defendants contend that the Court erred in reaching this conclusion because this case is factually similar to *Volvo* based on the evidence presented at trial.  (Rule 59 Motion at 12).  For example, Defendants contend that the Favored Buyers were "unique" by offering their own discount programs and operating as membership-based clubs.  (*Id.*).  Defendants also contend that the evidence showed that Sam's Club acted like a broker for Defendants by assisting with high-volume sales of Clear Eyes.  (*Id.*).

It is not clear from these arguments, however, why these facts push this action closer to the factual scenario in *Volvo* and away from that in *U.S. Wholesale*.  Indeed, many of these facts were similar to those in *U.S. Wholesale* as it also involved Costco as a favored buyer.  *See id.* at 1133. Additionally, the differences between Plaintiffs and the Favored Purchasers that Defendants highlight are exactly the "operational differences" that the Ninth Circuit ignored in *U.S. Wholesale*.  *See id.* 1146–47.

Based on the foregoing analysis, the Court concludes that it did not err in instructing the jury on Plaintiffs' Section 2(a) claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

### B.    The UPA Jury Instructions

Defendants also request the Court grant a new trial on Plaintiffs' UPA claim based on the purported errors underlying the Section 2(a) claim.  (Rule 59 Motion at 13). Because the Court rejects Defendants' arguments regarding the Section 2(a) jury instructions, their request for a new trial on the UPA claim likewise fails.  Moreover, Defendants do not assert any independent bases to support the view that the Court erred in giving the jury instructions on the UPA claim, which were distinct from the jury instructions on the Section 2(a) claim.  (*See* Jury Instructions at 17, 38).

Accordingly, the Rule 59 Motion is **DENIED**.

## IV.   PERMANENT INJUNCTION MOTION

Plaintiffs seek injunctive relief for Defendants' violations of Section 2(a) and the RPA, as found by the jury, and Section 2(d), which they urge the Court to find based on the evidence presented at trial.  (Injunction Motion at 1).  The five California Plaintiffs also seek injunctive relief under the UPA and UCL.  (*Id.* at 14–16).

### A.    Mootness

As a threshold matter, Defendants argue that Plaintiffs' request for injunctive relief is moot because Prestige has issued a new promotional offer available to all purchasers, including Plaintiffs.  (Injunction Opp. at 14).  In other words, there is no continuing antitrust violation for the Court to enjoin.  (*Id.*).  Defendants also suggest that there is no risk of future violation at this time because Clear Eyes is out of stock until May 17, 2024, due to supply issues.  (*Id.* at 15).

Although it is possible "that a defendant's conduct can moot the need for injunctive relief, [] the 'test for mootness in cases such as this is a stringent one.'" *FTC v. Affordable Media*, 179 F.3d 1228, 1328 (9th Cir. 1999) (citing *United States v. Concentrated Phosphate Export Ass'n., Inc.*, 393 U.S. 199, 203 (1968)).  Accordingly, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

reasonably be expected to recur."  *Friends of the Earth, Inc. v. Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Here, Defendants fail to meet this high burden of showing that their conduct moots the need for injunctive relief.  Notably, there is nothing preventing Defendants from returning to their unlawful pricing scheme once Clear Eyes is fully restocked. *See Affordable Media*, 179 F.3d at 1238 (denying mootness argument because the defendant failed to provide evidence that it was "'absolutely clear' that their wrongful activities are not reasonably likely to recur"); *Hendricks v. Aetna Life Ins. Co.*, 344 F.R.D. 237, 246 (C.D. Cal. July 25, 2023) ("Nothing prevents [the defendant] from returning to its old ways, so the injunction is still viable notwithstanding [the defendant's] change of heart.").  Moreover, "[a]n inference arises from illegal past conduct that future violations may occur."  *S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) (citations omitted).

At the hearing, Defendants suggested that the Court could hold an evidentiary hearing to determine, based on Prestige's testimony, whether the new promotional offer would be permanent.  The Court concludes that no such hearing is necessary because the foregoing analysis assumes that Defendants' assertions regarding the new promotional offer and the unavailability of Clear Eyes are true.  But the mere fact that Defendants have ceased their illegal conduct for now is insufficient to carry their burden, especially in light of the jury's finding of liability and the fact that the new promotional offer was only offered months after trial and once Plaintiffs moved for injunctive relief.  (*See* Declaration of Thomas Holloway ("Holloway Decl.") (Docket No. 348-1) ¶¶ 4–6).

Because injunctive relief would not be moot, the Court proceeds to the merits of Plaintiffs' request.

### B.    Injunction Under Federal Law

Section 16 of the Clayton Act provides as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

> Any person, firm, corporation, or association shall be entitled to sue for
> and have injunctive relief, in any court of the United States having
> jurisdiction over the parties, against threatened loss or damage by a
> violation of the antitrust laws, including sections 13 [the RPA], 14, 18,
> and 19 of this title, when and under the same conditions and principles
> as injunctive relief against threatened conduct that will cause loss or
> damage is granted by courts of equity[.]

15 U.S.C. § 26.  To determine whether Plaintiffs are entitled to injunctive relief under
the RPA, the Court must first determine whether Defendants' conduct "threatened loss
or damage by a violation of the antitrust laws."  *Id.*

### 1.  Violation of the RPA

Plaintiffs contend that the injunctive relief is warranted based on Defendants'
violation of Sections 2(a) and 2(d) under the RPA.

*Section 2(a)*: Plaintiffs first argue that the jury's finding of liability on their
Section 2(a) claim entitles them to injunctive relief.  (Injunction Motion at 6–7).

"Under section 2(a), all that is required to establish illegal price discrimination is
proof that competitive injury may result.  Once such a showing is made, the plaintiff is
entitled to an injunction preventing defendant from engaging in the anti-competitive
conduct."  *Hasbrouck*, 842 F.2d at 1042; *see also Falls City*, 460 U.S. at 435 ("Unless
rebutted by one of the Robinson-Patman Act's affirmative defenses, a showing of
competitive injury as part of a prima facie case is sufficient to support injunctive relief,
and to authorize further inquiry by the courts into whether the plaintiff is entitled to
treble damages under § 4 of the Clayton Act.").

Here, the jury found that Defendants violated Section 2(a) as to each Plaintiff.
(*See generally* Jury Verdict).  Therefore, the jury necessarily found that there was a
reasonable possibility that the discriminatory pricing may harm competition.  (*See* Jury
Instruction at 19).  Although Defendants attempt to challenge the jury's verdict based

---

CIVIL MINUTES—GENERAL                                              19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:      L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

on purported errors in the jury instructions, those arguments are mooted by the Court's
denial of the Rule 59 Motion.  (*See* Injunction Opp. at 9).

Accordingly, Plaintiffs demonstrated that Defendants violated Section 2(a).

***Section 2(d)***: Plaintiffs also contend that the evidence presented at trial supports
liability under Section 2(d) and urges the Court to find in their favor.

Section 2(d) makes it unlawful for "a seller to pay 'anything of value to or for
the benefit of a customer' for 'any services or facilities furnished by or through such
customer in connection with the sale' of the products unless the payment 'is available
on proportionally equal terms to all other customers competing in the distribution of
such products.'"  *U.S. Wholesale*, 89 F.4th at 1141 (citing 15 U.S.C. § 13(d)).  The
purpose of Section 2(d) is "to prevent an economically powerful customer like a chain
store from extracting a better deal from a seller at the expense of smaller businesses."
*Id.*  To prevail on their Section 2(d) claim, Plaintiffs must also establish competition
with the Favored Purchasers and "a threat of antitrust injury."  *Id.* at 1134.

As already noted, in returning a verdict in favor of Plaintiffs, the jury necessarily
found that Plaintiffs (with the exception of Border Cash & Carry, who competed with
Sam's Club only) and the Favored Purchasers were in competition.  (*See* Jury
Instruction at 19, 22; Verdict Form at 1).  Therefore, the Court must also find that
Plaintiffs and the Favored Purchasers were in competition.  *See L.A. Police Protective
League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993) ("[I]n a case where legal claims
are tried by a jury and equitable claims are tried by a judge, and the claims are 'based
on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires
the trial judge to follow the jury's implicit or explicit factual determinations.'" (citation
omitted)).  Accordingly, the crux of the Court's inquiry is (1) whether Defendants
made payments to the Favored Customers for services or facilities furnished that were
not available to Plaintiffs on proportionally equal terms, and (2) whether this conduct
created a threat of antitrust injury.

At trial, Plaintiffs presented testimony and documentary evidence showing that
Defendants participated in Costco's delivery, operations, and web services ("DOW")

CIVIL MINUTES—GENERAL                                          20

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                      Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

program, under which Defendants made quarterly payments to Costco for its advertising and promotional services.  (*See* FF&CL ¶ 9).  Plaintiffs also argued that they were never offered promotional payments akin to the DOW program.  (*Id.* ¶ 10).

Defendants do not meaningfully dispute these facts.  (*See* Defendants' Objections to Proposed FF&CL ¶¶ 9–10).  Instead, Defendants argue that it cannot be held liable under Section 2(d) because the DOW allowance was a program initiated by Costco rather than Defendants.  (Injunction Opp. at 6).  But the text of Section 2(d) undermines Defendants' argument, as it prohibits ***a seller*** – such as Prestige – from "pay[ing] or contact[ing] for the payment of anything of value to or for the benefit of a customer . . . in consideration for any service or facilities furnished by or through such customer."  15 U.S.C. § 13(d); *see also U.S. Wholesale*, 89 F.4th at 1139 (noting that the plaintiffs were "correct that selective reimbursements [under Costco's IRC program] may create liability for the supplier under section 2(d) if the supplier fails to offer them 'on proportionally equal terms to all other' competing purchasers").

Defendants also contend that Plaintiffs never offered programs similar to Costco's DOW program.  (*Id.*).  However, the Court is not aware of any cases that required Plaintiffs to affirmatively offer a similar program as their competitors, nor do Defendants provide any such authority.

The Court therefore concludes, based on the undisputed evidence presented at trial, that Defendants paid a 3.95% allowance to Costco under its DOW program and that Defendants did not make or offer similar payments to Plaintiffs.  (*See* FF&CL ¶ 17; *see also* Declaration of Mark Poe in Support of Injunction Motion (Docket No. 345-1) ¶¶ 2–5, Exs. A, B, C, D).  The Court also concludes that Plaintiffs (with the exception of Border Cash & Carry) demonstrated a threat of antitrust injury due to Defendants additional, exclusive payments to Costco under the DOW program.  (*See* FF&CL ¶ 18).  *See Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1273 (9th Cir. 2022) (defining an "antitrust injury" as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful" (citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

Accordingly, the Court concludes that Plaintiffs, with the exception of Border Cash & Carry, have shown that Defendants' conduct violated Section 2(d).

## 2.  Equitable Factors

Next, the Court determines whether Plaintiffs have shown that the sought relief is consistent with the "same conditions and principles as injunctive relief."  15 U.S.C. § 26.  Although Plaintiffs dispute that such a showing is required, the Court need not determine whether an RPA violation automatically entitles Plaintiffs to a permanent injunction since the relevant factors weigh in favor of injunctive relief.

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2020 WL 1812257, at *2 (N.D. Cal. Apr. 9, 2020) (applying the *eBay* factors in an antitrust case), *aff'd* 20 F.4th 466 (9th Cir. 2021).

***Irreparable Injury and Inadequate Remedies at Law***:  The Court considers the first two elements together since "'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin.  If the harm being suffered by plaintiff . . . is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'"  *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV-13-05167-BRO (MANx), 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) (citation omitted).  In other words, to demonstrate irreparable injury, the plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to compensate for the alleged injury."  *KWB & Assocs. v. Marvin*, EDCV 18-289-DMG (KKx), 2018 WL 5094927, at *7 (C.D. Cal. Apr. 18, 2018) (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                          Date:  May 20, 2024
Title:      L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

Plaintiffs contend that they will suffer irreparable injury if Defendants continue to violate Sections 2(a) and 2(d).  With respect to Section 2(d) specifically, Plaintiffs contend that the Supreme Court has effectively barred monetary damages for such violations.  (Injunction Motion at 12 (citing *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981)).

The Court agrees that Defendants' continued violation would "threaten[] loss or damage" if injunctive relief is not granted.  As Plaintiffs argue, monetary damages are unable to be easily measured in the context of a Section 2(d) claim, requiring a reliable model predicting how many additional units of Clear Eyes they would have sold if it had received the same benefits as Costco did under the DOW program.

Accordingly, the Court concludes that the first two factors weigh in favor of injunctive relief.

***Balance of Hardships***: Under the third element, the balance of hardships must favor Plaintiffs "to demonstrate a need for injunctive relief."  *Anhing*, 2015 WL 4517846, at *24.  Said simply, "the harm to Plaintiff[s] in the absence of an injunction must outweigh the harm to Defendant[s] as the result of one."  *Id.*

Here, the Court determines that Plaintiffs have demonstrated that the balance of hardships tilts in favor of granting an injunction.  As already noted, Plaintiffs have presented evidence that they have and will be harmed without an injunction.  (*See* Injunction Motion at 9–13).  On the other hand, the hardships to Defendants are minimal, as an injunction would merely seek their compliance with the RPA and state law.

In response, Defendants argue that any allegations of future harm are baseless because they no longer offer exclusive discounts on Clear Eyes.  (Injunction Opp. at 13).  But contrary to Defendants' belief, injunctive relief may be appropriate even when the unlawful conduct has ceased so long as there is a risk of recurrence.  *See FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1088 (9th Cir. 1985).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. **18-6809-MWF (MRWx)**                    Date:  **May 20, 2024**
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

Defendants also contend that that the proposed injunction would increase Defendants' operational costs due to the semi-annual reporting requirement.  (*Id.* at 13).  However, this argument does little to undermine Plaintiffs' argument that the balance of hardships weighs in favor of some type of injunctive relief and is better suited in addressing the scope of the injunction.

Accordingly, the third factor weighs in favor of injunctive relief.

***Public Interest***: Finally, the Court considers whether the public interest would not be disserved by a permanent injunction.

"By its very nature, the determination that [a defendant] has violated the Sherman Act and that 'the wrongs are ongoing or likely to recur' is a finding that an injunction is in the public interest because it will restrain the defendant from further anticompetitive conduct."  *Optronic Techs.*, 2020 WL 1812257, at *4 (citation omitted).  Indeed, the "central purpose of the antitrust laws . . . is to preserve competition," which they recognize "as ***vital to the public interest***."  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (citation omitted) (emphasis in original).

Because the jury already determined that Defendants violated the RPA, the only remaining issue is whether Defendants' conduct is ongoing or likely to recur.  As already discussed, there is nothing preventing Defendants from repeating their unlawful conduct.

Accordingly, the Court concludes that all four equitable factors weigh in favor of injunctive relief for Defendants' violations of the RPA.

### C.    <u>Injunction Under State Law</u>

The five California-based Plaintiffs also seek injunctive relief based on the jury's verdict finding in favor of their UPA claim and, therefore, in favor of their UCL claim under the "unlawful" prong.  (Injunction Motion at 14–15).

---

**CIVIL MINUTES—GENERAL**                                                              **24**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:        L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

Under section 17078 of the UPA "the court *shall* enjoin the defendant from doing all acts which are prohibited by" the UPA upon a finding of a violation.  Cal. Bus. & Prof. Code § 17078 (emphasis added).  "The use of the word 'shall' in section 17078 has been construed by [California courts] to require the mandatory grant of an injunction; however, the injunction will issue only upon demonstration of a clear violation of the [the UPA]."  *E&H Wholesale, Inc. v. Glaser Bros.*, 158 Cal. App. 3d 728, 733, 204 Cal. Rptr. 838 (1984) (citation omitted).

The UCL also prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The UCL "does not proscribe specific activities," but rather, "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable."  *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 643–44, 72 Cal. Rptr. 3d 903 (2008) (internal quotation marks and citations omitted).  Under section 17203, the Court may enjoin a party from engaging in the unlawful conduct.  Cal. Bus. & Prof. Code § 17203; *see also Optronic Techs.*, 2020 WL 1812257, at *5 (noting that injunctive relief under the UCL only requires the plaintiff to show "the elements of a cause of action involving the wrongful act sought to be enjoined and the grounds for equitable relief, such as, inadequacy of the remedy at law").

Here, the jury found that Defendants violated the UPA.  Therefore, the Court must also find Defendants violated the UPA and, in turn, the UCL.  *See Gates*, 995 F.2d at 1473.  In light of the mandatory language provided in the UPA, the Court concludes that a permanent injunction is warranted under both the UPA and UCL.

In response, Defendants argue that the UCL requires continuing violations for injunctive relief.  (Injunction Opp. at 14).  However, as already discussed, Defendants failed to demonstrate that "there is no reasonable possibility past unlawful acts will be repeated."  *People v. Nat'l Ass'n of Realtors*, 120 Cal. App. 3d 459, 476, 174 Cal. Rptr. 728 (1981).

Accordingly, injunctive relief is warranted for Plaintiffs' state law claims.

CIVIL MINUTES—GENERAL                                          25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024

Title:      L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

### D.      Scope of Injunction

Finally, the Court considers the terms and scope of the permanent injunction. The requested permanent injunction would order Defendants to comply with the following terms:

1. To allow all Plaintiffs (including any successor entities to Plaintiffs) other than Border Cash & Carry to purchase Clear Eyes on the same price terms and conditions on which Defendants sell Clear Eyes to the Costco Business Center division of Costco Wholesale Corporation ("Costco"), including the availability of any discounts, billback, rebates (including rebates such as the "Instant Redeemable Coupons"), or other terms that impact the net price paid by Costco;

2. to allow Plaintiffs (including any successor entities to Plaintiffs) other than Border Cash & Carry to participate, on proportionally equal terms, in all promotional programs and payments that Defendants make available to Costco in connection with the handling, sale, or offering for sale of Clear Eyes (including payments such as the DOW allowance);

3. to allow Border Cash & Carry (including any successor entity) to purchase Clear Eyes on the same price terms and conditions on which Defendants sell Clear Eyes to the Sam's Club division of Walmart, Inc. ("Sam's Club"), including the availability of any discounts, billbacks, rebates, or other terms that impact the net price paid by Sam's Club;

4. to submit, for a period of five years from the date of final judgment, a semi-annual report to Plaintiffs' counsel (on a "confidential" basis under the terms of the existing protective order) stating the list price Defendants are then-charging to Costco and to Sam's Club for Clear Eyes and the effective date of any increase or decrease in that price, along with an itemization and summary of any discounts, rebates, promotional terms, or other payments that Defendants make to Costco and Sam's Club in conjunction with sales of Clear Eyes; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  18-6809-MWF (MRWx)                    Date:  May 20, 2024
Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

5.  in the event that Defendants face supply shortages of Clear Eyes, to allocate any such limited quantities fairly between Plaintiffs and Costco, on a "most favored nations" basis (*i.e.*, Defendants may not decline to fulfill Plaintiffs' orders on grounds the product is "out of stock" if they are continuing to fulfill Costco's orders that are placed in the same timeframe).

(Docket No. 345-10).

"[A] federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 132 (1969) (citation omitted).  Antitrust remedies specifically will be upheld so long as they bear a "reasonable relation to the unlawful practices found to exist." *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014) (citing *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 394–95 (1965)); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 486 (9th Cir. 2021) (holding that the relief sought must "be based on a clear indication of a significant causal connection between the conduct enjoined or mandated and the violation found directed toward the remedial goal intended" (citation omitted)).

Here, the Court concludes that the first three provisions of the injunctive relief sought are appropriate because Plaintiffs seek to prohibit the precise unlawful conduct at issue in this litigation.  Contrary to Defendants' suggestion, none of these provisions is ambiguous.  (*See* Injunction Opp. at 16).  At the hearing, the Court specifically asked Defendants which terms were ambiguous.  Instead of directly answering the question, Defendants argued that Prestige's new pricing scheme undermined the need for the first two provisions.  Because this argument is merely a rehashing of the mootness argument, the Court rejects it for the same reasons already discussed.

The Court also finds that the fourth provision, which requires Defendants to submit a semi-annual report, is appropriate to ensure compliance with the injunction. Although such a requirement may be burdensome for Defendants, courts regularly impose similar types of provisions to ensure compliance with other provisions of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. **18-6809-MWF (MRWx)**                    Date:  **May 20, 2024**

Title:       L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

injunctions.  *See, e.g., FTC v. Mortgage Relief Advocates LLC*, No. 14-cv-5434-MWF, 2015 WL 11257575, at *9 (C.D. Cal. July 1, 2015) (requiring monitoring to ensure compliance); *FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1016 (C.D. Cal. 2012) (requiring reporting and recordkeeping); *Waterkeeper v. Corona Clay Co.*, No. 8:18-cv-00333-DOC (DFM), 2024 WL 94112, at *5 (C.D. Cal. Jan. 2, 2024) (requiring compliance monitoring and reporting in the context of an environmental case).

However, the Court denies Plaintiffs' request to order Defendants to fairly allocate limited quantities of Clear Eyes.  The Court finds that issuing such an injunction goes far beyond curing the effects of the illegal conduct at issue in this action, which Plaintiffs did not dispute at the hearing.

Accordingly, the Injunction Motion is **DENIED** *in part* with respect to the fifth provision but is otherwise **GRANTED**.

## V.   <u>CONCLUSION</u>

The Rule 59 Motion is **DENIED**.  The Injunction Motion is **GRANTED** *in part*.

A separate findings of fact and conclusions of law shall issue.

A separate judgment shall issue.

IT IS SO ORDERED.