MARK POE (S.B. #223714)
  mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. INTERNATIONAL CORP., et al.,<br><br>          Plaintiffs,<br><br>   v.<br><br>PRESTIGE BRANDS HOLDINGS, INC., et al.,<br><br>          Defendants. | Case No. 2:18-cv-06809-MWF-MRW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        July 8, 2024<br>Time:      10:00 a.m.<br>Courtroom:   5A |

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION.................................................................. VII

MEMORANDUM OF POINTS AND AUTHORITIES.......................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................ 1

LEGAL STANDARD ............................................................................................. 2

ARGUMENT.......................................................................................................... 3

   I.    PLAINTIFFS' COUNSEL EXPENDED A REASONABLE NUMBER OF
       HOURS. ........................................................................................................ 3

   II.   THE RATES MR. KNAPTON PROPOSES FOR PLAINTIFFS' COUNSEL
       ARE REASONABLE. .................................................................................. 6

      A.   The Skill, Experience, and Reputation of Counsel ..................................... 6

      B.   Counsel's Proposed Rates ............................................................................ 9

   III. THE COURT SHOULD AWARD A 2X MULTIPLIER UNDER EITHER
       OR BOTH FEDERAL AND STATE LAW. ............................................. 14

      A.   Plaintiffs' Counsel Are Entitled to an Enhanced Lodestar Under Federal
          Law............................................................................................................ 15

      B.   Plaintiffs' Counsel Are Entitled to an Enhanced Lodestar Under California
          Law............................................................................................................ 17

   IV. PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF CERTAIN
       NON-TAXABLE COSTS DUE TO THEIR SUCCESS ON THE UPA
       CLAIM. ..................................................................................................... 20

      A.   Video-recorded Depositions and Deposition Travel ................................. 21

      B.   Trial Exhibits ............................................................................................. 21

      C.   Trial Technician Services ........................................................................... 22

CONCLUSION...................................................................................................... 22

CERTIFICATE OF COMPLIANCE....................................................................... 1

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*ABC Distributing, Inc., et al. v. Living Essentials*,
    No. 15-cv-02064-NC (N.D. Cal.) ................................................................ 8

6

*ABC Distributing, Inc. v. Scandinavian Tobacco Group Lane Ltd.*,
    2:18-cv-00140-PA (C.D. Cal.) .................................................................... 8

7

*AdTrader, Inc. v. Google LLC*,
    2020 WL 1921774 (N.D. Cal. Mar. 24, 2020) ...................................... 11, 12

8

9

*Akins v. Enterprise Rent-A-Car Co. of San Francisco*,
    79 Cal. App. 4th 1127 (2000) ................................................................... 20

10

11

*Bravo v. City of Santa Maria*,
    810 F.3d 659 (9th Cir. 2016) .................................................................... 16

12

13

*Cates v. Chiang*,
    213 Cal. App. 4th 791 (2013) ................................................................... 20

14

15

*Charlebois v. Angels Baseball LP*,
    993 F. Supp. 2d 1109 (C.D. Cal. 2012) .................................................... 13

16

17

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) .................................................................................. 15

18

19

*Costco Wholesale Corp. v. Hoen*,
    538 F.3d 1128 (9th Cir. 2008) .................................................................... 2

20

*Democratic Party of Washington State v. Reed*,
    388 F.3d 1281 (9th Cir. 2004) .................................................................... 6

21

22

*Engel & Engel, LLP v. Shuck*,
    2021 WL 5119189 (Cal. Ct. App. Nov. 4, 2021) ...................................... 22

23

24

*Feeser's, Inc. v. Michael Foods, Inc.*,
    No. 04-cv-576 (M.D. Pa.) ........................................................................... 5

25

26

*Feesers, Inc. v. Michael Foods, Inc.*,
    591 F.3d 191 (3d Cir. 2010) ....................................................................... 6

27

28

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ................................................................. 2

*Hasbrouck v. Texaco, Inc.*,
  879 F.2d 632 (9th Cir. 1989) ...................................................... 2, 5, 16

*Hiken v. Dep't of Def.*,
  836 F.3d 1037 (9th Cir. 2016) ............................................................. 11

*Hope Med. Enterprises, Inc. v. Fagrgon Compounding Serv., LLC*,
  No. 19-CV-07748-CAS-PLAX, 2022 WL 826903 (C.D. Cal. Mar.
  14, 2022) ............................................................................................ 14

*Ingram v. Oroudjian*,
  647 F.3d 925 (9th Cir. 2011) ......................................................... 12, 13

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ................................................. 15, 16, 17

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ............................................................... 18, 19

*In re Lithium Ion Batteries Antitrust Litig.*,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ....................................... 3

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................ 13

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ................................................................... 2

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ............................................................... 3

*N.L. by Lemos v. Credit One Bank, N.A.*,
  807 Fed. Appx. 698 (9th Cir. June 3, 2020) ....................................... 20

*N.T.A.A. v. Nordstrom, Inc.*,
  No. 22-CV-398-DDP-AGRX, 2024 WL 1723524 (C.D. Cal. Apr.
  19, 2024) ............................................................................................ 14

*Netlist Inc. v. Samsung Elecs. Co.*,
  341 F.R.D. 650 (C.D. Cal. 2022) ......................................................... 14

*Newton v. Equilon Enterprises, LLC*,
　411 F. Supp. 3d 856 (N.D. Cal. 2019) ..................................................... 13

*In re Outlaw Laboratory, LP Litig.*,
　No. 18-cv-840-GPC-BGS, 2023 WL 6522383 (S.D. Cal. Oct. 5,
　2023) .......................................................................................................... 11

*Perdue v. Kenny A. ex rel. Winn*,
　559 U.S. 542 (2010) ............................................................................. 15, 17

*Perona v. Time Warner Cable*,
　No. 14-CV-02501-MWF-SPX, 2016 WL 8941101 (C.D. Cal. Dec.
　6, 2016) ................................................................................................. 17, 18

*Precision Printing Co. v. Unisource Worldwide, Inc.*,
　993 F. Supp. 338 (W.D. Pa. 1998) .......................................................... 11

*Progressive Sols., Inc. v. Stanley*,
　2018 WL 6267837 (N.D. Cal. July 13, 2018) ......................................... 21

*State ex rel. Rapier v. Encino Hosp. Med. Ctr.*,
　87 Cal. App. 5th 811 (2022) .................................................................... 22

*Rodriguez v. County of Los Angeles*,
　891 F.3d 776 (9th Cir. 2018) ................................................................... 19

*Rodriguez v. West Publishing Corp.*,
　563 F.3d 948 (9th Cir. 2009) ..................................................................... 9

*Rojas v. HSBC Card Servs. Inc.*,
　93 Cal. App. 5th 860 (2023) .................................................................... 21

*Rutti v. Lojack Corp.*,
　No. 06-cv-350-DOC-JCX, 2012 WL 3151077 (C.D. Cal. July 31,
　2012) .......................................................................................................... 13

*Trendsettah USA Inc. v. Swisher Int'l Inc.*,
　No. 14-cv-01664-JVS-DFMX, 2023 WL 8263365 (C.D. Cal. Nov.
　17, 2023) ............................................................................................. 11, 12

*Trepco Imports & Dist. Ltd v. Arizona Beverages USA, LLC*,
　5:18-cv-02605-JGB (C.D. Cal.) ................................................................. 8

*Tri-Valley Packing Ass'n v. FTC*,
 329 F.2d 694 (9th Cir. 1964) ................................................................ 8, 9

*U.S. Wholesale Outlet & Dist., Inc., et al. v. Living Essentials, LLC et al.*,
 2:18-cv-1077-CBM (C.D. Cal.) ................................................................ 8

*U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*,
 89 F.4th 1126 (9th Cir. 2023) ................................................................ 8

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
 546 U.S. 164 (2006) ........................................................................ 8, 14

*In re Washington Public Power*,
 19 F.3d 1291 (9th Cir. 1994) ................................................................ 12

*Weeks v. Baker & McKenzie*,
 63 Cal. App. 4th 1128 (1998) ................................................................ 17

*Welch v. Metro. Life Ins. Co.*,
 480 F.3d 942 (9th Cir. 2007) ............................................................ 2, 10

*Withrow v. Stryker Sales Corp.*,
 No. 16-cv-544-DSF(PLAX), 2018 WL 5858609 (C.D. Cal. Mar. 27, 2018) ............................................................................................. 18

*Zeigler v. Cnty. of San Luis Obispo*,
 No. 17-cv-9295-MWF-AFMX, 2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) ...................................................................................... 5, 6, 10

**Statutes**

15 U.S.C. § 15(a) ........................................................................................ 2

15 U.S.C. § 26 ............................................................................................ 2

28 U.S.C. § 1920 ...................................................................................... 21

Cal. Civ. Proc. Code § 1033.5(a)(3)(A), (C) .......................................... 21

**Other Authorities**

L.R. 54-3.5 ................................................................................................ 21

1

L.R. 54-3.10 ................................................................................................ 21

2

L.R. 37.1 ...................................................................................................... 4

3

L.R. 54-2 ...................................................................................................... 1

4

5

Rutter Group, *California Practice Guide – Civil Trials and Evidence*,
§ 17:317 ................................................................................................. 22

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 8, 2024, at 10:00 a.m., in the courtroom of the Honorable Michael W. Fitzgerald, located at Courtroom 5A of the Central District of California courthouse, 350 W. 1st Street, Los Angeles, California, Plaintiffs L.A. International Corp., Manhattan Wholesalers Inc., Excel Wholesale Distributors Inc., Value Distributor, Inc., Border Cash & Carry, Inc., AKR Corporation, U.S. Wholesale Outlet & Distribution, Inc., Sanoor, Inc. (d/b/a L.A. Top Distributor), Pittsburg Wholesale Grocers, Inc., and Pacific Groservice, Inc. (Pittsburg together with Pacific, "Pitco") will and hereby do bring this Motion for Attorneys' Fees and Costs regarding their successful pursuit of claims for Defendants' violations of the Robinson-Patman Act, 15 U.S.C. § 13, and of the California Unfair Practices Act, Cal. Bus. & Prof. Code § 17045. Plaintiffs respectfully request an award up to $7,453,615.60 in attorney's fees, plus $35,546.99 in costs that are recoverable pursuant to California law.

This motion is based upon the following memorandum, the supporting declarations of Mark Poe and Gerald Knapton and the exhibits thereto, the papers and pleadings on file with the Court, and such other argument and materials as may be presented before the Court takes this motion under submission.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 21, 2024.

Dated: June 3, 2024                                   GAW | POE LLP


                                                      By:   s/ *Mark Poe*
                                                            Mark Poe
                                                            Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' counsel have expended over 3,000 hours on this matter without compensation for nearly six years, and have fronted over $360,000 in litigation expenses out of their own pockets.  Decl. of Mark Poe ¶ 2.  Those efforts resulted in a victory on all four causes of action alleged in the operative complaint, which has in turn secured the level-playing field that was the primary aim of this litigation.  Significantly, the nine Plaintiffs themselves are not the only beneficiaries of counsel's efforts.  Defendants Prestige Brands Holdings, Inc. and Medtech Products, Inc. (together, "Prestige") have changed their pricing structure so that dozens of other similarly situated family-owned wholesalers around the country will also be free from the discriminatorily high prices they have been charged for Clear Eyes for over a decade.

Plaintiffs are now entitled to the mandatory attorneys' fees required by sections 15 and 26 of the Clayton Act, and by section 17082 of the Unfair Practices Act.  The lodestar calculation results in a fee award of $3,726,807.80.  Plaintiffs' counsel request that the Court apply a 2x multiplier, for an award of $7,453,615.60.

Plaintiffs' counsel also request reimbursement for certain costs that are recoverable from their success on the UPA claim, which costs cannot be awarded by the Clerk through the process set forth in Local Rule 54-2.  *See* Form CV-59 at 2 ("The Clerk does not have discretion to tax any item not identified as taxable in the Local Rules.").  That amount is $35,546.99.

## FACTUAL AND PROCEDURAL BACKGROUND

L.A. International filed this action on August 8, 2018.  ECF No. 1.  The other eight plaintiffs joined via an amended complaint filed twelve days later.  ECF No. 10.  That complaint alleged four causes of action: (1) section 2(a) of the Robinson-Patman Act ("RPA"), (2) section 2(d) of the RPA, (3) section 17045 of California's Unfair Practices Act ("UPA"), and (4) California's Unfair Competition Law ("UCL").  *Id.* ¶¶ 50-66.

1    Prestige mounted a vigorous defense that resulted in hard-fought litigation, as

2    reflected by a docket containing over 370 filings, and spanning more than 31,000

3    pages.  Poe Decl. ¶ 3.  In the end, Plaintiffs were successful on all four causes of

4    action they prosecuted at trial,[1] obtaining over $1 million in damages and a permanent

5    injunction prohibiting Prestige from engaging in all of the acts that the amended

6    complaint alleged to be illegal.  They are now entitled to fees and costs.

7                                   **LEGAL STANDARD**

8    Section 4 of the Clayton Act provides that a successful plaintiff "shall recover

9    … the cost of suit, including a reasonable attorney's fee."  15 U.S.C. § 15(a).  "An

10   award of attorney's fees as part of the cost of a successful antitrust suit is mandatory."

11   *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 635 (9th Cir. 1989).  Fees are likewise

12   mandatory for injunctive relief in antitrust actions. 15 U.S.C. § 26; *Costco Wholesale*

13   *Corp. v. Hoen*, 538 F.3d 1128, 1136 (9th Cir. 2008) ("Congress made fee awards

14   mandatory under § 26").  Section 17082 of the UPA likewise makes fees mandatory

15   for plaintiffs who establish a violation of section 17045.  Cal. Bus. & Prof. Code

16   § 17082 ("the plaintiff shall be awarded a reasonable attorney's fee together with the

17   costs of suit.").

18   Courts employ the "lodestar" method as the starting point for statutory fee-

19   shifting. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).  Under that

20   method, "the district court 'multiplies the number of hours the prevailing party

21   reasonably expended on the litigation by a reasonable hourly rate.'" *Gonzalez v. City*

22   *of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citation omitted).  "The party

23   seeking fees bears the burden of documenting the hours expended in the litigation

24   and must submit evidence supporting those hours and the rates claimed." *Welch v.*

25   *Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

26

27   _____

     [1] Plaintiffs voluntarily withdrew the California statutory claims for the non-
     California Plaintiffs, Opp. to Summ. J. at 25 (ECF No. 113-2), and the section 2(d)
28   claim for Border Cash & Carry.  Proposed FOFCOL ¶ 18 (ECF No. 346-1).

**ARGUMENT**

**I.   PLAINTIFFS' COUNSEL EXPENDED A REASONABLE NUMBER OF HOURS.**

"Antitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (collecting citations).   As the Ninth Circuit has explained, courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112-13 (9th Cir. 2008).   This is particularly true in contingency cases, where a lawyer faces keen incentives not to spend any more time than necessary to achieve the desired result.   As explained in *Moreno*, "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees [because] the payoff is too uncertain, as to both the result and the amount of the fee." *Id.* at 1112.

Here, Plaintiffs seek compensation for 3,122.6 hours incurred through March 19, 2024.   Counsel submit herewith a complete report of their time-keeping records, which their counsel have reviewed to delete approximately 35 hours of entries deemed either vague, excessive, duplicative, or clerical in nature.   Poe Decl. ¶ 4; Decl. of Gerald Knapton Ex. 2.   Counsel's time was further reviewed and categorized into task categories.   Knapton Decl. ¶ 32.   Counsel's time breaks down as follows:

| Task Category | Hours |
|---|---|
| Pleadings | 27.7 |
| Written Discovery | 373.2 |
| Depositions | 347.9 |
| Pre-Trial Motions | 563.7 |
| Expert Matters | 158.2 |

| Hearings | 77.7 |
| Other Strategy | 20.7 |
| Settlement/Mediation | 35.5 |
| Trial Prep | 1046.8 |
| Trial | 256.1 |
| Post-Trial Motions | 215.1 |

*Id.*

Counsel's work in this case included collecting, reviewing, and producing over 5,800 pages of their clients' documents, and reviewing over 76,000 pages of documents in fifteen Prestige productions, plus modest productions by Costco and J&J Sales. Poe Decl. ¶ 5. It further required the taking and defending of 18 depositions, held in eight different states. *Id.* ¶ 6. It also entailed numerous discovery disputes with Prestige, including five that required initiation of the Local Rule 37.1 meet-and-confer process, two of which resulted in formal motions. *Id.* ¶ 7; ECF Nos. 56, 78. Costco similarly resisted discovery into the pricing advantages it enjoyed, requiring Plaintiffs to engage (and their counsel to pay for) local counsel in the Western District of Washington to file a motion to compel Costco to comply with Plaintiffs' subpoena. *Id.* ¶ 7. The case also involved extensive motion practice, including a motion to dismiss, ECF No. 19, *Daubert* and summary judgment motions filed by both sides, ECF Nos. 91, 96, 98, 106, and post-trial motions. ECF Nos. 345, 347.

In counsel's experience the only outlier in the above category allocation is the 1046.8 hours classified as "Trial Prep." Poe Decl. ¶ 8. That amount was the unavoidable consequence of the trial date having been repeatedly delayed due to the COVID-19 pandemic and the ensuing backlog on the Court's trial docket. *See* ECF No. 255 (vacating April 14, 2020 trial date); ECF No. 271 (setting December 6, 2022

trial date); ECF No. 275 (resetting trial date for April 3, 2023); ECF No. 277 (vacating April 3, 2023 trial date); ECF No. 278 (resetting trial date for December 5, 2023).  Counsel's time records for "Trial Prep" map those continuances.  Counsel recorded 490.1 hours to that category leading up to the April 2020 trial date.  Poe Decl. ¶ 8.  That was followed by an additional 145.2 hours in the fall of 2022 in anticipation of the December 2022 trial date.  *Id.*  After that date was vacated, counsel incurred 396.5 more hours of trial prep leading up to the trial that occurred.  *Id.*

The gaps in trial preparation required certain duplication of effort for counsel to refamiliarize themselves with everything from the particular legal issues the case presented, to the deposition transcripts, witness outlines, the 800+ trial exhibits between the two sides, and the opposing expert opinions.  *Id.* ¶ 9.  Quoting the Ninth Circuit, this Court has recently recognized that "'[a]ll this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time.'"  *Zeigler v. Cnty. of San Luis Obispo*, No. 17-cv-9295-MWF-AFMX, 2023 WL 3432238, at *8 (C.D. Cal. Mar. 1, 2023) (quoting *Moreno*, 534 F.3d at 1112) (emphasis in original).  In *Zeigler* as here, "[t]his reasoning squarely applies here because the litigation was conducted over the course of five years and the trial date changed four different times."  *Id.*

One data point for assessing the reasonableness of the number of hours Plaintiffs' counsel expended is to compare their claimed hours to the number of hours expended in similar cases.  Consistent with their difficulty and uncertainty, however, the number of successful private RPA actions that have resulted in a verdict for the plaintiff and an ensuing fee award is vanishingly small.  The most apt comparator is *Hasbrouck v. Texaco*, where twelve gas station owners claimed price discrimination by Texaco.  631 F. Supp. 258, 259 (E.D. Wash. 1986).  There, the district court approved (and the Ninth Circuit affirmed) a fee award that included 6,550 hours of attorney time up through the first trial in that action.  *Id.* at 260, *aff'd in part, rev'd in part*, 879 F.2d 632 (9th Cir. 1989).  Another data point is *Feeser's, Inc. v. Michael*

*Foods, Inc.*, No. 04-cv-576 (M.D. Pa.), where after a successful bench trial, plaintiff's counsel submitted a fee petition claiming 18,515 hours.  Poe Decl. ¶ 10, Ex. A ¶ 9 (table of hours billed, excluding non-lawyers).[2]

As the Ninth Circuit has further noted, "there is one particularly good indicator of how much time is necessary … and that is how much time the other side's lawyers spent."  *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).    Plaintiffs would hazard a guess that if Prestige contests the reasonableness of Plaintiffs' claimed hours, and submits a declaration reporting the number of hours recorded by its own counsel, that number would reflect favorably on Plaintiffs' request.

## II.   THE RATES MR. KNAPTON PROPOSES FOR PLAINTIFFS' COUNSEL ARE REASONABLE.

The hourly rates requested by Plaintiffs' counsel are reasonable, and commensurate with the rates that they have been awarded both in this District and in the Northern and Southern Districts of California.  As this Court observed in *Zeigler*, "[t]he Ninth Circuit has held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" 2023 WL 3432238, at *4 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).  We first summarize the skill, experience, and reputation of the Gaw | Poe attorneys who worked on this case, then explain the bases for the rates proposed.

### A.   The Skill, Experience, and Reputation of Counsel

#### 1.   Attorney Profiles

The professional backgrounds of each of the Gaw | Poe LLP attorneys who billed time to this case are set forth at paragraphs 12-16 of the accompanying Poe Declaration.  To summarize, the firm's cofounders are classmates of the 2002 class

---

[2] The fees motion was stayed pending appeal, and was mooted when liability was reversed in *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191 (3d Cir. 2010).

of Stanford Law School.  *Id.* ¶¶ 12-13.  Mr. Poe graduated "with distinction," and spent a year at Morrison & Foerster in San Francisco before accepting a clerkship on the Ninth Circuit for Judge Richard Clifton in Honolulu.  *Id.* ¶ 12.  He then took a two-year position working for the national environmental law firm Earthjustice, in its Bozeman, Montana office.  *Id.*  Mr. Poe returned to Morrison & Foerster, where he spent seven years and became Of Counsel, before co-founding Gaw | Poe in 2014.  *Id.*  Mr. Gaw likewise spent approximately a decade at multinational law firms, first at Wilson Sonsini, then at O'Melveny & Myers, where he held the title of Counsel prior to starting his own firm in 2012.  *Id.* ¶ 13.  Mr. Gaw has been recognized as a "Super Lawyer" every year since 2018, and Mr. Poe has received that recognition every year since 2020.  *Id.* ¶¶ 12-13.

The firm's junior partners and Of Counsel likewise come from "biglaw" backgrounds.  Firm partners Samuel Song and Victor Meng had been colleagues of Mr. Poe at Morrison & Foerster, where each had spent seven years.  *Id.* ¶¶ 14-15.  Of Counsel Flora Vigo had been colleagues with Mr. Gaw at O'Melveny & Myers, where she likewise spent seven years, first as an associate and later becoming Counsel.  *Id.* ¶ 16.

### 2.   Gaw | Poe's Revival of the Robinson-Patman Act

Counsel's "skill, experience, and reputation" in Robinson-Patman Act litigation is unrivaled by any firm in the country.  While at Morrison & Foerster defending Plaintiff Pitco against a strict-liability trademark infringement claim in 2013, Mr. Poe came across the RPA while investigating the pricing practices of the plaintiff in that case.  *Id.* ¶ 17.  Perceiving the RPA as a righteous and under-enforced area of antitrust law, Mr. Poe spent six months' of daily commutes reading RPA precedent.  *Id.*  Mr. Gaw (who had his own firm at the time) coincidentally represented another C-Store wholesaler in the same action.  *Id.*  After that case resolved, Mr. Poe and Mr. Gaw founded Gaw | Poe in 2014.  *Id.*  Among their express intentions was to pursue RPA claims.  *Id.*

Ten years on, Gaw | Poe's experience in litigating the RPA is unmatched by any firm in the country, whether plaintiff or defense.  In addition to this case, the firm's past and pending RPA cases are:  *ABC Distributing, Inc., et al. v. Living Essentials*, No. 15-cv-02064-NC (N.D. Cal.); *ABC Distributing, Inc. v. Scandinavian Tobacco Group Lane Ltd.*, 2:18-cv-00140-PA (C.D. Cal.); *Trepco Imports & Dist. Ltd v. Arizona Beverages USA, LLC*, 5:18-cv-02605-JGB (C.D. Cal.); *U.S. Wholesale Outlet & Dist., Inc., et al. v. Living Essentials, LLC et al.*, 2:18-cv-1077-CBM (C.D. Cal.); and *Roma Mikha, Inc. et al. v. Southern Glazers Wine and Spirits*, LLC, 22-cv-01187-FWS (C.D. Cal.).  Those cases all settled, with two exceptions: *Southern Glazers* is a class action against the country's largest liquor distributor, brought on behalf of independent liquor stores who are charged illegally high prices compared to their chain-store competitors.  *Id.* ¶ 19.   The other unresolved case is *U.S. Wholesale*.  Counsel lost the jury's verdict, but on appeal obtained a reversal of the judge's 2(d) ruling.  In the course of doing so, counsel established the important principle that competition under the RPA should normally be evaluated by the standard set forth in *Tri-Valley Packing Ass'n v. FTC*, 329 F.2d 694 (9th Cir. 1964), rather than the more stringent standard from *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164 (2006).  *See U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1146-47 (9th Cir. 2023).  Gaw | Poe partnered with the famed Supreme Court litigation team from D.C.-based Goldstein & Russell PC on that appeal, but Mr. Poe principally authored the briefing, and argued the case.  Poe Decl. ¶ 19.

Gaw | Poe's success in reviving the RPA from a decades-long dormancy has been recognized by the ABA's Antitrust Law Section.  Mr. Poe was invited as a panelist at the 2022 ABA Antitrust Committee's Spring Meeting, for a panel titled "Is There a Robinson-Patman Act Revival?"  *Id.* ¶ 20.  Similarly, he was an invited panelist in a December 2021 ABA presentation titled "The Robinson-Patman Act; Practical Applications."  *Id.*  Mr. Poe is also the author of an article titled "The Critics

Are Wrong:  How the Robinson-Patman Act Has Been Misunderstood By Its Detractors," in the latest edition of Antitrust Magazine, the Antitrust Law Section's triannual publication.  *Id.*  Most recently, Mr. Poe has been invited as a panelist for an RPA litigation seminar organized by Professor Daniel Sokol, the renowned antitrust scholar from USC's Gould School of Law.  *Id.*

The FTC has also taken notice of Gaw | Poe's efforts.  In conjunction with the agency's own efforts to renew RPA enforcement,[3] Commissioner Alvaro Bedoya and his staff contacted Mr. Poe to gain insight into the firm's experience.  *Id.* ¶ 21.  Mr. Poe thereafter made a presentation to the FTC, attended by Commissioner Bedoya, the Deputy Director of the FTC's Bureau of Competition, and 80+ other FTC attorneys, economists, and staff.  *Id.*  For his part, Mr. Gaw recently met with FTC Chair Lina M. Khan regarding the Commission's interest in reviving the RPA, along with a small number of industry representatives and trade groups.  *Id.*

Reflecting the significance of Gaw | Poe's leadership in this practice area, nine months after the firm filed *Southern Glazers*, it was reported that the FTC had opened its own investigation of Southern Glazers' RPA violations.[4]  *Id.* ¶ 22.  As the Court may know, the great majority of private antitrust actions grow out of findings first revealed by government investigations.  *See, e.g.*, *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (noting the difficulty private antitrust plaintiffs face where "there [are] no government coattails for the [plaintiffs] to ride."). Here, the roles are reversed, with government enforcers following trails blazed by Gaw | Poe.

### B.    Counsel's Proposed Rates

---

[3] *See, e.g.*, Morrison & Foerster client alert, "*FTC Will Move Forward with Robinson-Patman Act Enforcement 'in Short Order'*" (Mar. 28, 2023) available at www.mofo.com/resources/insights/230328-ftc-robinson-patman-act-enforcement.

[4] *See* Politico.com, "Feds target alcohol pricing in new antitrust probe," Mar. 30, 2023, *available at* https://www.politico.com/news/2023/03/30/feds-target-alcohol-pricing-in-new-antitrust-probe-00089676.

Plaintiffs submit with their fee application a declaration from Mr. Gerald Knapton, in which he analyzes both the number of hours counsel expended, and the hourly billing rates that would reflect "'the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" *Welch*, 480 F.3d at 946 (citation omitted). Mr. Knapton is a senior partner in the Los Angeles office of Ropers Majeski, and has nearly 30 years' of experience in analyzing and opining on the reasonableness of attorney fee claims, equally divided on both sides of fee petitions. Knapton Decl. ¶¶ 2-4. Mr. Knapton has "particular experience in antitrust cases," *id.* ¶ 2, and has been qualified as a testifying expert on fees approximately 60 times. *Id.* Ex. 1 at 3 (Mr. Knapton's *curriculum vitae*).

As Mr. Knapton declares, "I review legal bills almost every day and, because of this, I have an understanding of what rates are for the Los Angeles area for legal work over the period at issue from 2014 to the present time." *Id.* ¶ 50. Mr. Knapton cross-checks his personal knowledge by referencing the Real Rate Report published by Wolters Kluwer as an objective source of the rates charged by similarly experienced Los Angeles counsel. *Id.* ¶¶ 50-52. The hourly rates reported in the Real Rate Report are calculated "from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment." Knapton Decl. Ex. 3 at 5 (2023 Real Rate Report). As this Court has observed, the Real Rate Report is regularly relied on as a reliable source. *See e.g.*, *Zeigler*, 2023 WL 3432238, at *5 (relying "primarily" on the Real Rate Report to establish rates in a civil rights case, recognizing it as "'a much better reflection of true market rates than self-reported rates in all practice areas.'") (quoting *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. 21-cv-089-PSG-VBKx, 2021 WL 4786889, at *2 (C.D. Cal. Aug. 24, 2021)).

In establishing hourly rates, a district court can appropriately consider "'rate determinations in other cases, particularly those setting a rate for the plaintiffs'

attorney.'"  *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (citation omitted).  On two other recent fee petitions in *non*-antitrust cases, district courts have held that the skill, experience, and reputation of Gaw | Poe's named partners warrants rates at the Real Rate Report's third quartile rates for litigation partners in the given forum.  *See Trendsettah USA Inc. v. Swisher Int'l Inc.*, No. 14-cv-01664-JVS-DFMX, 2023 WL 8263365, at *14 (C.D. Cal. Nov. 17, 2023) ("the Court finds the 2022 Real Rate Report third quartile Los Angeles rate for general litigation to be a reasonable basis for Gaw | Poe's rates"); *In re Outlaw Laboratory, LP Litig.*, No. 18-cv-840-GPC-BGS, 2023 WL 6522383, at *4 (S.D. Cal. Oct. 5, 2023) ("Their backgrounds justify placing them in the third quartile for partner pay and compensating them at $996 per hour.").  The Northern District has awarded rates somewhat higher than the Real Rate Report's third-quartile rates.  Four years ago, Judge Freeman approved rates of $1,000/hour for Mr. Gaw and Mr. Poe, and $855/hour for their colleagues, deeming such amounts "reasonable and comparable to the fees generally charged by attorneys with similar experience, ability, and reputation." *AdTrader, Inc. v. Google LLC*, 2020 WL 1921774, at *8 (N.D. Cal. Mar. 24, 2020).  The $1,000/$855 rates for Gaw | Poe attorneys were 7% and 10% higher, respectively, than the then-current third-quartile rate indicated by the Real Rate Report.  Poe Decl. ¶ 23.

Those three cases, in contrast to this one, involved fairly routine subject matters.  *Trendsettah* and *AdTrader* were primarily breach of contract cases,[5] and *In re: Outlaw Laboratory* was a civil RICO case.  This case, in contrast, involved the notoriously complicated RPA and its convoluted body of precedent.  *See Precision Printing Co. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 345 (W.D. Pa. 1998) ("numerous courts and commentators have noted that Robinson–Patman is one of the

---

[5] While the *Trendsettah* case had originally included a $44.4 million Sherman Act verdict, the 2023 fee award was based only on the contract claims. *Trendsettah*, 2023 WL 8263365, at *9-10.

most difficult, if not inscrutable, antitrust laws in existence.") (collecting sources). Accordingly, and because rates are to be set based on fees charged for "similar work," *Ingram*, 647 F.3d at 928, Mr. Knapton opines that rather than the general "Litigation" rate awarded in simpler cases, the appropriate category for this case is the "Corporate: Other" category, which includes "Antitrust and Competition" matters. Knapton Decl. ¶¶ 65-67, 70. Mr. Knapton proposes that—commensurate with the past determinations in *Trendsettah*, *AdTrader*, and *In Re: Outlaw Laboratory*—Gaw | Poe's named partners be classified in the "third quartile," with its somewhat more junior attorneys classified at the "median" rate. *Id.* ¶ 72-73. As of 2023, those rates were $1,240 and $944 per hour, respectively. *Id.* ¶ 71 (replicating Ex. 3 at 99).

As Mr. Knapton further explains, the 2023 edition of the Real Rate Report is based on invoices spanning from July 1, 2020 through June 30, 2023. *Id.* ¶ 54 (citing Ex. 3 at 221). Because even the most recent data is now a year out-of-date, Mr. Knapton opines that the reported rates should be adjusted upward by an additional 6%. *Id.* ¶ 61. He proposes that annual increase based on information reported by Thomson Reuters, the Bureau of Labor Statistics, a report put out by Wells Fargo's "legal specialty group" that found an average rate increase of 9.5% between 2023 and 2024, and his personal observation that "[i]n my work reviewing invoices by law firms I observed that the first month of 2024 produced an unusually large increase of about 6% over the mid-year 2023 rates." *Id.* ¶¶ 56-60. Upon making that adjustment to the rates reported as of mid-2023, Mr. Knapton opines that the reasonable rate for Gaw | Poe's named partners is $1,314, and for the firm's other attorneys is $1,001. *Id.* ¶ 80.[6]

There is yet another data point that serves as a cross-check on Mr. Knapton's

---

[6] Mr. Song departed Gaw Poe in May 2022 to join Palo Alto Networks, but that fact does not warrant a rate reduction. *See In re Washington Public Power*, 19 F.3d 1291, 1305 (9th Cir. 1994) (providing that where an attorney has left a firm prior to the fee petition, the court award either the current rate for that attorney, or his historic rate "coupled with a prime rate enhancement").

opinion as to rates.  The 2022 edition of the Real Rate Report included a specific "Antitrust and Competition – Litigation" category.  Poe Decl. Ex. B at 45.  It reported a third-quartile hourly rate for antitrust litigation of $1,321, with a median rate of $1,068.  *Id.*  In other words, Mr. Knapton's proposed rates are lower than the prevailing rates for the specific category of "antitrust litigation" *as of two years ago*.  In light of Gaw | Poe's singular experience and leadership in RPA litigation, there can be little question but that Mr. Knapton's proposed rates are reasonable for "similar work performed by attorneys of comparable skill, experience, and reputation."  *Ingram*, 647 F.3d at 928.

When establishing rates for contingency counsel in long-running litigation, the rule is that "[i]n calculating the lodestar, it is appropriate for counsel to use their current hourly rates at the time of the fee motion."  *Newton v. Equilon Enterprises, LLC*, 411 F. Supp. 3d 856, 882 (N.D. Cal. 2019) (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)).  This is because "compensation received several years after the services were rendered … is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings."  *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *see also, e.g.*, *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119 n.6 (C.D. Cal. 2012) (observing that "for the fee award to be reasonable, it must be based on current, rather than historic, hourly rates.") (citations omitted); *Rutti v. Lojack Corp.*, No. 06-cv-350-DOC-JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates.").

Mr. Knapton's proposed rates and hours for each of Plaintiffs' counsel is:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Randolph Gaw | 618.2 | $1,314 | $812,314.80 |
| Mark Poe | 1,302.2 | $1,314 | $1,711,090.80 |

| Samuel Song | 1,165.0 | $1,001 | $1,166,165.00 |
|---|---|---|---|
| Victor Meng | 5.8 | $1,001 | $5,805.80 |
| Flora Vigo | 31.4 | $1,001 | $31,431.40 |
| **Total** | **3,122.6** | | **$3,726,807.80** |

The hours reported here are current through the March 19, 2024 end-date of Mr. Knapton's analysis.  Plaintiffs' counsel have recorded modest amounts of time on additional post-trial matters since, plus time for finalizing the papers for this motion, and in reviewing, researching, and drafting their reply papers.  Counsel will report those additional hours in their reply brief.

Finally, the rates proposed by Plaintiffs' counsel are in line with other rates approved in this District.  *See N.T.A.A. v. Nordstrom, Inc.*, No. 22-CV-398-DDP-AGRX, 2024 WL 1723524, at *4 (C.D. Cal. Apr. 19, 2024) (citing cases).  Two months ago in *N.T.A.A.*, Judge Pregerson approved partner and senior counsel hourly rates of up to $1,364.70 for Lanham Act litigation, which Plaintiffs submit is significantly less complex than antitrust litigation, particularly under the Robinson-Patman Act.  And two years ago, in a breach of contract action, Magistrate Spaeth approved hourly partner rates of up to $1,370.  *See Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022).  That same year, Judge Snyder approved hourly partner rates of up to $1,295 for a business tort / unfair competition lawsuit.  *See Hope Med. Enterprises, Inc. v. Fagron Compounding Serv., LLC*, No. 19-cv-07748-CAS-PLAX, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022).

## III.   THE COURT SHOULD AWARD A 2X MULTIPLIER UNDER EITHER OR BOTH FEDERAL AND STATE LAW.

To Plaintiffs' knowledge, their success in achieving a level playing field as between family-owned businesses and their giant chain competitors is the first plaintiff-side RPA jury verdict since the 2002 verdict that was overturned in *Volvo*

*Trucks.*  Plaintiffs' counsel are uniquely knowledgeable and experienced in this under-enforced area of antitrust law, and the rare and exceptional result they achieved is deserving of a 2x multiplier of the lodestar amount.  Plaintiffs are entitled to such an enhancement under either or both federal and California law.

### A.   Plaintiffs' Counsel Are Entitled to an Enhanced Lodestar Under Federal Law.

While federal law does not permit lodestar enhancements based purely on the *contingent risk* a plaintiff faces, *see City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), the Supreme Court nevertheless holds that an enhancement to the lodestar "may be awarded in 'rare' and 'exceptional' circumstances." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (cleaned up).  The Ninth Circuit subsequently approved a 2.0 multiplier to the lodestar fee amount in *Kelly v. Wengler*, 822 F.3d 1085, 1093, 1099 (9th Cir. 2016).  In that case—which arose under the Prison Litigation Reform Act—the Ninth Circuit affirmed the district court's use of two factors not subsumed within the lodestar figure: (i) superior performance by counsel and (ii) the need to attract competent counsel.  *Id.* at 1102.

As to the first factor, the Ninth Circuit affirmed the district court's expressed justification that the plaintiffs' lawyers "provided 'extraordinary performance yielding extraordinary results' and that 'the quality of the work that produced these results [was] underrepresented in the hourly fee.'"  *Id.* at 1103.  Among other things, the Ninth Circuit pointed to the fact that the relief obtained by those lawyers benefitted numerous people in addition to the plaintiffs themselves, and that the relief was substantially greater than what the defendant had offered by way of settlement. *Id*.  Both of those things are true here too.  *See* Poe Decl. ¶¶ 35-38.

Here, Plaintiffs' counsel secured not just a victory for their clients, but forced Prestige to cease its practice of charging discriminatorily higher prices to small competitors of Costco and Sam's Club **across the entire country**, while also extending to those family-owned businesses proportionally equal promotional

1    payments.  *See* Decl. of Thomas Holloway ¶¶ 4-6 (ECF No. 348-1) (describing

2    Prestige's post-verdict overhaul of its pricing and promotions).  The value provided

3    by Plaintiffs' counsel to these wholesalers is not easily quantifiable, but is certainly

4    "underrepresented in the hourly fee" that results from an unadorned lodestar.  *Cf.*

5    *Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016) (affirming $1.023

6    million fee award despite $5,002 jury verdict because the litigation achieved multiple

7    benefits to multiple people beyond the verdict).  Viewed differently, wholesalers

8    around the country likely would have happily banded together to pay Plaintiffs'

9    counsel double their reasonable hourly fee if they were told that by so doing, they

10   would get to the same level playing field as Costco and/or Sam's Club on this staple

11   C-store item.

12        Regarding the second factor, the Ninth Circuit agreed with the district court

13   that an unenhanced rate would result in attorneys being unwilling to take on PLRA

14   cases.  *Kelly*, 822 F.3d at 1104.  A similar rationale exists here, as Plaintiffs' counsel

15   and Mr. Knapton are unaware of any other law firm willing to take on plaintiff-side

16   RPA cases on a contingency basis.  Poe Decl. ¶ 33; Knapton Decl. ¶ 20.  RPA

17   litigation is infrequent in recent decades, likely because case law has made it

18   exceedingly difficult for plaintiffs to prevail,[7] given the host of affirmative defenses

19   available to manufacturers, and given that damages are modest for section 2(a) claims

20   and essentially unquantifiable for section 2(d) claims.

21        Indeed, the Ninth Circuit quoted an experienced antitrust practitioner's

22   unchallenged testimony that "Robinson–Patman litigation is among the most difficult

23   types of cases that can be brought into federal courts; and, frankly, the obstacles that

24   have been created in proving damages in those cases have made it apparent that it is

25   very, very difficult for plaintiffs to succeed."  *Hasbrouck v. Texaco*, 879 F.2d 632,

26

27   _____

     [7] *See, e.g.*, Harry Ballan, *The Courts' Assault on the Robinson-Patman Act*, 92
28   COLUM. LAW REV. 634, 634 n.5 (1992) (describing proliferation of "judge-made"
     defenses" in RPA litigation).

637 (9th Cir. 1989).  Certainly, the landscape for RPA plaintiffs has not improved in the 35 years since—the case law reflects repeated losses for plaintiffs, if not at trial then at the appellate level.  Given that successful RPA claims bring great value to a host of businesses (and have positive downstream effects for consumers), a 2x multiplier on the fee award requested by Plaintiffs' counsel is necessary "to ensure that it [is] adequate to attract competent counsel in comparable cases."  *Kelly*, 822 F.3d at 1105.  Recognizing that lodestar enhancements under federal law are reserved only for "rare" and "exceptional" outcomes, *Kelly*, 822 F.3d at 1103, this is just such a case.

### B.    Plaintiffs' Counsel Are Entitled to an Enhanced Lodestar Under California Law.

Even if the Court determines that an enhanced award is not necessary to attract "competent counsel" to enforce the RPA, *Perdue*, 559 U.S. at 554, "California does not follow the approach to fee awards adopted by the federal courts … As a result, an upward or downward adjustment from the lodestar figure will be far more common under California law than federal law." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (1998).  As relevant here, the most significant distinction between the federal and state standards is that while neither the "novelty and complexity of a case," *Perdue*, 559 U.S. at 553, nor "the contingency of the outcome," *id.* at 558, can justify an enhancement under federal law, both of those are explicit bases for lodestar enhancements under California law.  *See, e.g.*, *Perona v. Time Warner Cable*, No. 14-cv-02501-MWF-SPX, 2016 WL 8941101, at *12 (C.D. Cal. Dec. 6, 2016).  In *Perona*, this Court recited the standard:

> In deciding whether to apply a multiplier, the Court should consider the following factors: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award."

- 17 -

*Id.* (quoting *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)).

While a lodestar enhancement lies within a court's discretion, caselaw suggests that it should not be a rarity.  As this Court recited in *Perona*, "'the contingent and deferred nature of the fee award in a … case with statutory attorney fees *requires* that the fee be adjusted in some manner to reflect the fact that the fair market value of legal services provided on that basis is greater than the equivalent noncontingent hourly rate.'" 2016 WL 8941101, at *12 (quoting *Horsford v Board of Trustees of California State University*, 132 Cal. App. 4th 359, 394-95 (2005)) (emphasis added).  Similarly, *Pellegrino v. Robert Half International, Inc.* explained that "'[o]ur courts have recognized that an enhanced fee award *is necessary* to compensate attorneys for taking such risks:  A contingent fee *must be higher* than a fee for the same legal services paid as they are performed.'"  182 Cal. App. 4th 278, 292 (2010) (quoting *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (2008)) (emphasis added).

Although "'[a] multiplier may be based on a single relevant factor,'" *Withrow v. Stryker Sales Corp.*, No. 16-CV-544-DSF(PLAX), 2018 WL 5858609, at *5 (C.D. Cal. Mar. 27, 2018) (quoting *Krumme v. Mercury Ins.*, 123 Cal. App. 4th 924, 947 (2004)), all four *Ketchum* factors are present here.

First, the novelty and complexity of the issues is reflected by the fact that this may be the first plaintiff-side § 17045 jury verdict ever returned—counsel are unable to find any prior instance.  Poe Decl. ¶ 30.  The novelty of this verdict is highly significant.  In *ABC International Traders, Inc. v. Matsushita Elec. Corp.*, the California Supreme Court did a deep dive into the legislative history and policy motivations behind § 17045.  14 Cal. 4th 1247, 1254-63 (1997).  It found that the section was "intended mainly to restrain the quickly growing chain stores from certain well-documented abuses of their buying power, abuses that, together with other factors, were thought to have a highly destructive effect on wholesale and retail competition in the food industry and other trades." *Id.* at 1258.  This was important,

the court explained, because "[s]ocially, it was feared the result of chain store domination would be the loss of an endangered middle class, the 'prosperous *bourgeois* class [that] has been considered one of the mainstays of our civilization.'" *Id.* at 1260 (citation omitted).  This case was brought precisely to preserve the ability of these family-owned businesses to compete with the giant chains.  *See* Am. Compl. ¶¶ 13-15 (ECF No. 10) (alleging Plaintiffs' motivations).  Plaintiffs' counsel were successful in that goal, and to the extent that they have established a roadmap for the protection of independent merchants, they deserve an enhancement for "the novelty and difficulty of the questions involved."  *Ketchum*, 24 Cal. 4th at 1132.

Second, while Plaintiffs defer to the Court's assessment of their counsel's skill, they submit that their success on all four claims against vigorous and experienced defense counsel is instructive.  Third, for a small firm like Gaw | Poe, a commitment of 3,000+ hours is significant, and in fact precluded them from pursuing other matters that may well have settled more easily.  Poe Decl. ¶ 32; *see also, e.g.*, *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018) (affirming a 2x multiplier and $5,378,174.66 in fees where plaintiffs faced "'aggressive opposition' from [defendants]; and the opportunity costs the years-long litigation in this case required.").

Fourth, the contingent nature of the representation cannot be overstated.  Plaintiffs' counsel have not received any compensation for their work on this case for six years, and the named-partners have advanced over $360,000 in post-tax money from their own pockets to prosecute this case on behalf of their clients.  "'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.'"  *Ketchum*, 24 Cal. 4th at 1133 (citation omitted).  Plaintiffs further submit that a significant contingent risk adjustment is necessary to attract competent counsel to price-discrimination cases like this, where the odds of success are

demonstrably low.  Poe Decl. ¶¶ 30-31 (reviewing the history of § 17045 precedent).

Finally, "[t]here is no hard-and-fast rule limiting the factors that may justify" a lodestar enhancement.  *Cates v. Chiang*, 213 Cal. App. 4th 791, 823 (2013) (citation omitted).  Here, there can be no doubt but that counsel's efforts were both the but-for and proximate reason why all family-owned wholesalers in the country now enjoy a level-playing field with Costco and Sam's Club, yielding immeasurable benefits to those third-parties.  Holloway ¶¶ 4-6 (ECF No. 348-1).

Of course, if a multiplier were awarded only on the state-law claims, the multiplier should not apply to time spent only on the RPA.  That said, time spent in service of both claims is nevertheless recoverable via the state claims.  *See, e.g.*, *Akins v. Enterprise Rent-A-Car Co. of San Francisco*, 79 Cal. App. 4th 1127, 1133 (2000) (holding that "fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not."); *N.L. by Lemos v. Credit One Bank, N.A.*, 807 Fed. Appx. 698, 699 (9th Cir. June 3, 2020) (quoting *Akins* and finding that apportionment of fees between statutory fees claim and non-fees claim was unnecessary because all of the claims "share a common factual core").

The primary categorical exclusions are for work (1) exclusive to the RPA, (2) that counsel performed solely for the four out-of-state plaintiffs who did not have a section 17045 claim, and (3) time spent seeking fees.  Counsel has reviewed the individual time entries that comprise their lodestar, and have excluded the entries for those categories.  *See* Poe Decl. ¶ 34; Ex. G.  That reduces the hours from 3,122.6 to 2,818.3, and the resulting lodestar from $3,726,807.80 to $3,304,077.60.  *Id.* Applying a 2x multiplier to that amount yields total fees of $6,608,155.20.

## IV.  PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF CERTAIN NON-TAXABLE COSTS DUE TO THEIR SUCCESS ON THE UPA CLAIM.

Where an action involves both state and federal claims. "[e]ligibility for an

award of attorneys' fees and costs for state law claims is a matter of California law." *Progressive Sols., Inc. v. Stanley*, 2018 WL 6267837, at *2 (N.D. Cal. July 13, 2018) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) and *Ford v. Baroff*, 105 F.3d 439, 442 (9th Cir. 1997)). Here, Plaintiffs' success on the UPA claim entitles them to recover "the costs of suit" in addition to fees. Cal. Bus & Prof. Code § 17082.

The recoverable costs are set forth in section 1033.5(c)(1) of the California Code of Civil Procedure, and are more expansive than those under 28 U.S.C. § 1920. Accordingly, Plaintiffs seek to recover certain costs associated with depositions, copies of trial exhibits, and the amount they paid their trial tech for his time during trial.

### A.   Video-recorded Depositions and Deposition Travel

Under federal cost-shifting, "[t]he cost of videotaping or recording depositions is not taxable." L.R. 54-3.5. Under California law, in contrast, costs for "video recording" and "travel expenses to attend depositions" are recoverable. Cal. Civ. Proc. Code § 1033.5(a)(3)(A), (C). For video recording, Plaintiffs seek $4,956.10 for the Billelo, Maher, Christian, Burnett, Grehn, and Quattlebaum depositions. Poe Decl. ¶ 25, Ex. C. They further seek $9,624.48 for the travel expenses they incurred in attending depositions in this case, all 18 of which required travel. Poe Decl. ¶ 26, Ex. D. Counsel exclude travel expenses to defend the non-California plaintiffs' depositions, since those did not involve the state claims. *Id.*

### B.   Trial Exhibits

Federal cost-shifting permits recovery only for "copies of documents or other materials admitted into evidence." L.R. 54-3.10. In contrast, California law provides that "'costs related to unused photocopies of trial exhibits and demonstratives are not categorically recoverable under section 1033.5(a)(13), but they may still be awarded in the trial court's discretion pursuant to section 1033.5(c)(4).'" *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 900 (2023) (citation omitted). Here, the parties

designated over 800 trial exhibits.  Creating three copies of Plaintiffs' exhibits and two copies of Defendants' exhibits cost counsel $7,736.41.  Poe Decl. ¶ 27, Ex. E; s*ee State ex rel. Rapier v. Encino Hosp. Med. Ctr.*, 87 Cal. App. 5th 811, 839-40 (2022) (approving reimbursement of $20,291.11 for "enlargements" and "three photocopied sets of exhibits").

### C.    Trial Technician Services

Subsection (a)(13) of the California costs statute includes costs associated with "the electronic presentation of exhibits" where "reasonably helpful to aid the trier of fact."  *See* The Rutter Group, *California Practice Guide – Civil Trials and Evidence*, § 17:317; *see also Engel & Engel, LLP v. Shuck*, 2021 WL 5119189, at *11 (Cal. Ct. App. Nov. 4, 2021) (affirming reimbursement where the "trial support vendor's … 'electronic presentation' of exhibits" was "reasonably helpful").  Plaintiffs submit that Mr. Beyer's presentation of exhibits both shortened the trial, and was reasonably helpful in aiding the trier of fact to understand the case.  Accordingly, Plaintiffs seek reimbursement for 58.8 hours of Mr. Beyer's trial attendance, at his $225 per hour rate, or $13,230 of his $30,250.65 bill.  Poe Decl. ¶ 28, Ex. F.

These three categories total $35,546.99.  *Id.* ¶ 29.

### CONCLUSION

Plaintiffs respectfully request that the Court grant this motion and award them up to $7,453,615.60, plus $35,546.99 in costs under California law.

Dated:  June 3, 2024                                GAW | POE LLP


                                                    By:   s/ *Mark Poe*
                                                    Mark Poe
                                                    Attorneys for Plaintiffs

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned certifies that their memorandum of points and authorities

3   contains 6,970 words, in compliance with the word limit of L.R. 11-6.1.

4

5   Dated:  June 3, 2024                          GAW | POE LLP

6
                                                 By:   s/ *Mark Poe*
7                                                     Mark Poe
                                                      Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28