Michael L. Fox (SBN 173355)
Sean Patterson (SBN 234565)
Christine C. Ross (SBN 280646)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

Robert Kum (SBN 185530)
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: +1 213 689 7400
Fax: +1 213 689 7401
E-mail: mlfox@duanemorris.com
rkum@duanemorris.com
cspatterson@duanemorris.com
ccross@duanemorris.com

Attorneys for Defendants
PRESTIGE CONSUMER HEALTHCARE INC.
(fka "Prestige Brands Holdings, Inc.") and
MEDTECH PRODUCTS INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

L.A. INTERNATIONAL CORP., MANHATTAN WHOLESALERS INC., EXCEL WHOLESALE DISTRIBUTORS INC., VALUE DISTRIBUTOR, INC., BORDER CASH & CARRY, INC., AKR CORPORATION, U.S. WHOLESALE OUTLET & DISTRIBUTION, INC.; SANOOR, INC. (d/b/a L.A. TOP DISTRIBUTOR); PITTSBURG WHOLESALE GROCERS, INC.; and PACIFIC GROSERVICE, INC.

Plaintiffs,

v.

PRESTIGE BRANDS HOLDINGS, INC. and MEDTECH PRODUCTS INC.,

Defendants.

Case No.: 2:18-cv-06809-MWF-MRW

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Date: July 8, 2024
Time: 10:00 a.m.
Judge: Hon. Michael W. Fitzgerald
Courtroom: 5A

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs' Proposed Hourly Rates are Far from Reasonable. .......... 2

B. Plaintiffs' Counsel—and Especially the Gaw | Poe Partners—Billed an Unreasonable Amount of Hours. .......... 6

C. Given the Relatively Low Verdict, No Enhancement is Warranted. .......... 7

D. Plaintiffs' Rejection of Defendants' Rule 68 Offer of Judgment Warrants a Reduction in Fees. .......... 10

E. The Court Should Not Order Reimbursement of Non-Taxable Costs. .......... 12

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anaheim Union High Sch. Dist. v. J.E.*
2:12-cv-6588-MWF (C.D. Cal. July 11, 2013) ....... 4

*Antoninetti v. Chipotle Mexican Grill, Inc.*
49 F. Supp. 3d 710 (S.D. Cal. 2014) ....... 8

*Avery v. Pac. Coachworks, Inc.*
2020 WL 8461471 (C.D. Cal. Nov. 13, 2020) ....... 4

*Beauchamp v. Anaheim Union High Sch. Dist.*
816 F.3d 1216 (9th Cir. 2016) ....... 2

*Bridgeport Music, Inc. v. WB Music Corp.*
520 F.3d 588 (6th Cir. 2008) ....... 7

*Chaudhry v. City of L.A.*
751 F.3d 1096 (9th Cir. 2014) ....... 3

*In re Fine Paper Antitrust Litigation*
751 F.2d 562 (3d Cir. 1984) ....... 7

*Gold v. NCO Financial Systems, Inc.*
No. 09cv1646-LAB (CAB), (S.D. Cal. Aug. 20, 2010) ....... 7

*Haworth v. State of Nev.*
56 F.3d 1048 (9th Cir. 1995) ....... 10-12

*Hensley v. Eckhart*
461 U.S. 424 (1983) ....... 9

*Hiken v. Dep't of Def.*
836 F.3d 1037 (9th Cir. 2016) ....... 2

*Kerr v. Screen Extras Guild, Inc.*
526 F.2d 67 (9th Cir. 1975) ....... 8

*Liang v. AWG Remarketing, Inc.*
2016 WL 428294 (S.D. Ohio Feb. 4, 2016) ....... 7

*Magic Laundry Services, Inc. v. Workers United Service Emp. Int'l Union*
2:12-cv-09654-MWF-AJW (C.D. Cal. June 21, 2013) .......... 4

*Matevosyan v. Mercedes-Benz USA, LLC*
2023 WL 8125448 (C.D. Cal. Jul. 10, 2023) .......... 3, 7

*Run Guo Zhang v. Lin Kumo Japanese Restaurant Inc.*
2015 WL 5122530 (S.D.N.Y. Aug. 31, 2015) .......... 7

*Russell v. Walmart Inc.*
2024 WL 305388 (C.D. Cal. Jan. 2, 2024) .......... 11

*Silicon Genesis Corp. v. Ev Grp. E. Thallner Gmbh*
Case No. 22-cv-04986-JSC (N.D. Cal. April 15, 2024) .......... 4

*Stanger v. China Elec. Motor, Inc.*
812 F.3d 734 (9th Cir. 2016) .......... 8

*Zeigler v. Cnty. of San Luis Obispo*
2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) .......... 5, 11

**California Cases**

*Chavez v. City of Los Angeles*
47 Cal. 4th 970, 104 Cal. Rptr. 3d 710 (2010) .......... 8-9

*Envtl. Prot. Info. Ctr. v. California Dep't of Forestry & Fire Prot.*
190 Cal. App. 4th 217, 118 Cal. Rptr. 3d 352 (2010) .......... 8-9

*Sokolow v. Cty. of San Mateo*
213 Cal. App. 3d 231, 261 Cal. Rptr. 520 (Ct. App. 1989) .......... 9

*Thayer v. Wells Fargo Bank*
92 Cal. App. 4th 819, 112 Cal. Rptr. 2d 284 (2001) .......... 10

*Weeks v. Baker & McKenzie*
63 Cal. App. 4th 1128, 74 Cal. Rptr. 2d 510 (1998) .......... 10

Defendants Prestige Consumer Healthcare Inc. (fka "Prestige Brands Holdings, Inc.") and Medtech Products Inc. ("Defendants") hereby submit this Opposition to Plaintiffs' Motion Attorneys' Fees and Costs (ECF No. 377) (the "Motion"):

## I. INTRODUCTION

Plaintiffs' Motion should be denied in part for five reasons. First, the requested hourly rates for Plaintiffs' counsel are too high and do not reflect a reasonable rate. This position is supported by the expert opinion of Grant D. Stiefel, whose declaration is submitted with this Opposition. In the instant litigation, Plaintiffs previously requested hourly rates of $744 per hour for partners. Tellingly, that previously requested rate almost exactly matches the highest hourly rate defense counsel has charged Defendants. Also, Plaintiffs' expert fails to account for the fact that Gaw | Poe is a small firm with four attorneys when comparing them some of the largest firms in Los Angeles.

Second, the fee award should be reduced because the Gaw | Poe partners billed too many hours. That is, by failing to delegate any tasks to associates and paralegals, a reduction to the lodestar is warranted.

Third, Plaintiffs' counsel do not deserve an enhancement (and especially not double their own inflated calculations). Plaintiffs overstated the jury's verdict and the Court's findings, which delivered nothing to one of the plaintiffs and higher prices for Clear Eyes Pocket Pal across the country.

Fourth, Plaintiffs rejected Prestige's December 2019 Rule 68 offer of judgment in the amount of $450,000. When comparing this offer to the ultimate recovery to Plaintiffs, a further reduction is necessary.

Fifth, the Court should not order reimbursement of Plaintiffs' non-taxable costs. Plaintiffs cannot utilize a California statute to deliver cost-recovery to all Plaintiffs, including those whose businesses are in New York and elsewhere, with no applicability to the California Unfair Practices Act ("UPA").

## II. ARGUMENT

The Motion should be denied in part. Defendants do not dispute counsel's qualifications, training, or years of experience. Defendants also do not dispute that the jury returned a verdict, and the Court issued findings and conclusions, both in Plaintiffs' favor. Plaintiffs' counsel's fee application includes inflated hourly rates and too many hours in an attempt to elevate their own remuneration over that of Plaintiffs, who will already be fully compensated for their alleged harm after paying a contingency fee out of the jury's award. Plaintiffs' 38% contingency fee, accounting for treble damages, provides a far more reasonable fee than the bounty their attorneys seek to extract.

### A. Plaintiffs' Proposed Hourly Rates are Far from Reasonable.

Plaintiffs' counsel's proposed hourly rates of $1,314 for partners and $1,001 for "other attorneys" are inflated. Still, the proposed hourly rates have no legitimate basis in fact, law, or even expert opinion.

"To determine a 'reasonable hourly rate,' the district court should consider: 'experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented.'" *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Chalmers v. City of L.A.*, 796 F.2d 1205, 1211 (9th Cir. 1986)). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). "Once a fee applicant presents such evidence, the opposing party 'has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted

affidavits.'" *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110–11 (9th Cir. 2014) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)). "If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Matevosyan v. Mercedes-Benz USA, LLC*, 2023 WL 8125448 (C.D. Cal. Jul. 10, 2023) (quoting *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV 21-089-PSG (VBKx), 2021 WL 4786889, at *2 (C.D. Cal. Aug. 24, 2021)).

Plaintiffs' fee expert, Gerald Knapton, cites *Matevosyan*, 2023 WL 8125448 (C.D. Cal. Jul. 10, 2023) in support of his reliance on the Real Rate Report. *See* Decl. of Gerald G. Knapton at ¶ 64 (ECF No. 377-9). However, *Matevosyan* actually points out that the Real Rate Report is not the end all, be all of a fee calculation. Instead, the Real Rate Report was only one of three factors considered by the *Matevosyan* court in calculating the award of fees to the plaintiff's counsel. There, the court first considered (1) previous awards of fees to the plaintiff's counsel in a similar case, and (2) the actual hourly rate which the plaintiff's counsel charged non-contingent clients. When considering these factors, this Court ultimately reduced the plaintiff's requested hourly rate. Accordingly, *Matevosyan* suggests that both previous fee awards *and the actual rate charged by the attorneys* in non-contingent cases are equally, if not more influential in determining the reasonable calculation of fees.

Here, Plaintiffs' counsel have not disclosed their actual hourly rates charged to paying clients. If those real rates are as high as $1,300 per hour, they surely would have said so. Additionally, like in *Matevosyan*, the contingent nature of this case does not justify a higher hourly rate. And even if counsel had disclosed their real hourly rates, the Court would be justified in awarding less than those. *See Matevosyan*, 2023 WL 8125448 (awarding plaintiff's counsel $515 per hour when he declared he normally charged $550 per hour).

Moreover, the rate that Plaintiffs' counsel seeks is similar to what certain *large* Los Angeles firms charge. But Gaw | Poe is not a large firm. In fact, it only has *four*

attorneys.

Similar to our case, *Avery v. Pac. Coachworks, Inc.*, No. EDCV 17-151-MWF (DTBx), 2020 WL 8461471 (C.D. Cal. Nov. 13, 2020), involved a California Unfair Competition Law ("UCL") claim. One of the plaintiff's attorneys requested $645 per hour and supported that request with a declaration from an expert witness in billing and fee disputes. *Id.* at *3. However, the Court gave the declaration little weight because it only referred to the rates that larger litigation firms charge and provided little justification as to why $645 was reasonable in the circumstances of the case. *Id.* at *4. The Court also refused a 15% enhancement award for one firm and a 1.1 multiplier for another firm as unjustified. *Id.* at *6.

Here, Mr. Knapton ignored the Real Rate Report's information for small firms in the Los Angeles market. As Mr. Stiefel opines, for a partner at a small firm in the Los Angeles market in the Real Rate Report, the more realistic hourly rate is $600.

As this Court has held, rates encroaching on the outer bounds of the fee range cannot be considered prevailing. *See* Order Granting in Part and Denying in Part Motion for Attorneys' Fees at 4, *Anaheim Union High Sch. Dist. v. J.E.*, 2:12-cv-6588-MWF (C.D. Cal. July 11, 2013) (ECF No. 50). Even despite a supporting declaration, fee requests with above-market rates for Los Angeles must be reduced. *See* Order Granting in Part Motion for Statutory Attorney's Fees and Costs at 2, *Magic Laundry Servs., Inc. v. Workers United Serv. Emp. Int'l Union*, 2:12-cv-09654-MWF-AJW (C.D. Cal. June 21, 2013) (ECF No. 66).

Plaintiffs' counsel and Knapton do not make any reference to Gaw | Poe's most recent fee award, an April 2024 order from the Northern District of California where the district court approved a billable rate of $1,000 per hour for Mr. Poe in a patent litigation dispute. *See Silicon Genesis Corp. v. Ev Grp. E. Thallner GmbH*, Case No. 22-cv-04986-JSC, at *2-3 (N.D. Cal. Apr. 15, 2024).[1] Mr. Poe's rate in *Silicon*

[1] A true and correct copy of this order is attached as Exhibit D to the Stiefel Declaration.

*Genesis*, which was decided only two months ago, was $314 per hour ***lower*** than the rate he seeks in this litigation, a difference of ***31 percent***. Plaintiffs do not address these prior rates awards, much less justify why a 31 percent increase would be justified in this case. Nor do Plaintiffs cite any Central District case where an attorney was awarded $1,314 per hour. *Compare Magic Laundry* Order at 2 (noting that requested rate was higher than any awarded in Central District cases cited in party's brief).

The Court should not place much weight on Plaintiffs' counsel's declaration given its self-serving nature. *See Zeigler v. Cnty. of San Luis Obispo*, 2023 WL 3432238, *4 (C.D. Cal. Mar. 1, 2023) (quoting *Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-CV-620 JLS (NLS), 2010 WL 1912867, at *4 (S.D. Cal. Apr. 21, 2010) ("[T]he value of these declarations is questionable because they are both self-serving and self-perpetuating. Each of these attorneys works [in this area of the law] and claiming that the rates charged by Plaintiff's counsel, no matter how high, is in their own interest. A high award in this case would support the declarants' own high hourly rate requests in the future.")). Further, the billing records attached to Mr. Poe's declaration include the *proposed* hourly rate for him and his colleagues. Not only do they lack the actual hourly rate charged to Plaintiffs (if any), but the original billing records have been modified for purposes of the Motion. The Court should be skeptical of these records.

Plaintiffs' own filings in this case show that Plaintiffs' fee award—and the requested hourly rates—must be heavily reduced. Indeed, Magistrate Judge Wilner already held that Plaintiffs' waived their right to certain fees. In the summer of 2019, the parties were engaged in a discovery dispute over Prestige's ESI collection and certain issues with emails. On July 26, 2019, Plaintiffs filed their Motion to Compel Defendants to Produce Missing Emails (ECF No. 78). As part of that motion, Plaintiffs sought reimbursement of their attorneys' fees in bringing the motion. ECF No. 78 at 7 & n.2. At that time, Plaintiffs' counsel proposed a "conservative hourly

rate" for the Gaw | Poe partners of $744 per hour, and $510 per hour for Mr. Song. *Id.*; *see also* M. Poe Decl. at ¶¶ 17-19. But now Plaintiffs' counsel requests almost double those hourly rates for the same work, in the same litigation, for the same clients, by the same attorneys. Such a request is unreasonable on its face.[2] Moreover, Plaintiffs forewent their ability to recoup fees at the motion hearing, and Magistrate Judge Wilner was ostensibly taken aback: "At the hearing, Plaintiffs waived their right to seek fees under Rule 37(a)(5) (while tauntingly murmuring that they'll collect them later in the action - wow!)." Order re: Motion to Compel Electronic Discovery at 2 (Aug. 6, 2019) (ECF No. 83). This decision to forego fees in 2019—but now attempt to recoup them later—shows the case was never about a level playing field. Rather, it was actually about Plaintiffs' counsel being awarded attorneys' fees in an amount that dwarfs (i) the jury's verdict, and (ii) any recovery to be delivered to their clients after counsel deducts their contingency fee.

As a final point of comparison, undersigned counsel is charging Prestige nowhere near $1,300 per hour. Plaintiffs' requested recommended rate is 76 percent higher than the highest hourly rate ($745/hour) actually charged by Defendants' counsel in the underlying litigation. *See* Stiefel Decl. at ¶ 44. This rate is much more in line with Plaintiffs' counsel's prior fee awards than the astronomical rates proposed by Mr. Knapton.

**B. Plaintiffs' Counsel—and Especially the Gaw | Poe Partners—Billed an Unreasonable Amount of Hours.**

Plaintiffs' counsel's fee request should also be denied because they failed to delegate hardly any work whatsoever to less experienced attorneys. As Mr. Stiefel opines, the Motion is the most top heavy fee application he has ever encountered in his 140 plus testifying assignments. Stiefel Decl. at ¶¶ 6, 48. By billing over 3,000 hours as partners, Plaintiffs' counsel failed to appropriately distribute the work the

[2] If Plaintiffs believe 6% per year rate increases are reasonable, *see* Mot. at 12, then a more reasonable hourly fee would be $939 (representing $744 per hour requested in 2019 plus four years of annual 6% increases).

way any other law firm would have: with associates and paralegals taking on much of the drafting and day-to-day work. *Id.* at ¶ 50. Indeed, the average hourly billing rate of $1,193 per hour is the highest Mr. Stiefel has ever seen—before requested enhancement. *Id.*

Consistent with decisions across the country, this is not reasonable and requires a downward adjustment to the lodestar amount. *See, e.g.*, *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 593 (3d Cir. 1984) ("the court concluded that over 5,000 hours of partner time was spent on tasks which should have been assigned to associates"); *Run Guo Zhang v. Lin Kumo Japanese Restaurant Inc.*, No. 13cv6667 (PAE), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (reducing partner rate where, in addition to charging an unreasonably high rate, the partner also engaged in a substantial amount of associate-level work); *H.B. Auto. Grp., Inc. v. Kia Motors Am., Inc.*, 13cv4441 (VEC) (DF), at *17 (S.D.N.Y. July 25, 2018) (court reduced partner's hourly rate where partner engaged in a number of tasks typically performed by associates); *Gold v. NCO Fin. Systems, Inc.*, No. 09cv1646-LAB (CAB), at *7 n.5 (S.D. Cal. Aug. 20, 2010); *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 596 (6th Cir. 2008) (affirming the district court's decision to reduce the lodestar amount by 25% "to account for top-heavy billing by partners for work that could have been performed by associates"); *see also Liang v. AWG Remarketing, Inc.*, No. 2:14-cv-00099, 2016 WL 428294, at *15–16 (S.D. Ohio Feb. 4, 2016) (in a case where 82% of time was billed by partners, the court reduced the lodestar "to account for the top-heavy billing reflected in the invoices"). Mr. Stiefel opines that a reasonable lodestar reduction is taking 50% of the partners' hours and reallocating them at an associate rate. *Id.* at ¶ 55. When applying these recommended (and required) rate adjustments, the maximum recommended fee award is $2,711,197.50.

**C. Given the Relatively Low Verdict, No Enhancement is Warranted.**

Plaintiffs' request for a two-times enhancement should be denied. "[U]nder Ninth Circuit precedent, multipliers are disfavored, as the Ninth Circuit has plainly

stated that the lodestar amount is 'presumptively the reasonable fee amount' and that a modification of the lodestar is appropriate only in 'rare' and 'exceptional' cases supported by both 'specific evidence on the record and detailed findings…that the lodestar amount is unreasonably low or unreasonably high.'" *Matevosyan*, 2023 WL 8125448 (citing *Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216 (C.D. Cal. 2020)).

"Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar 'are the exception rather than the rule.'" *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (per curiam) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002)). Nevertheless, the Court in its discretion may adjust the lodestar figure upward or downward based on the factors first enunciated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), including:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 715–16 (S.D. Cal. 2014), *aff'd sub nom. Goldkorn v. Chipotle Mexican Grill, Inc.*, 669 F. App'x 920 (9th Cir. 2016).

"The most important factor, both in the view of the State of California and in the view of this Court under the current circumstances, is the plaintiff's success. *See Envtl. Prot. Info. Ctr. v. California Dep't of Forestry & Fire Prot.*, 190 Cal. App. 4th 217, 238, 118 Cal. Rptr. 3d 352 (2010), *as modified on denial of reh'g* (Dec. 15, 2010) ("*EPIC*") ("California law, like federal law, considers the extent of a plaintiff's success a crucial factor in determining the amount of a prevailing party's attorney fees."). "[U]nder state law as well as federal law, a reduced fee award is appropriate

when a claimant achieves only limited success." *Chavez v. City of L.A.*, 47 Cal. 4th 970, 989, 104 Cal. Rptr. 3d 710 (2010) (citations omitted). Where a plaintiff fails to obtain "important goals of" the action, even if she has technically prevailed on all of her claims, "the trial court should take into consideration the limited success achieved . . . ." *Sokolow v. Cnty. of San Mateo*, 213 Cal. App. 3d 231, 250, 261 Cal. Rptr. 520 (Ct. App. 1989).

In *Hensley v. Eckhart*, 461 U.S. 424 (1983), the Supreme Court set out a two-step test for determining whether a fee award should be reduced in light of the plaintiff's limited success. California applies the *Hensley* approach to fee requests under state statute. *See Chavez*, 47 Cal. 4th at 989. "The first step asks whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded.'" *EPIC*, 190 Cal. App. 4th at 239. (quoting *Hensley*, 461 U.S. at 434). Here, both parties agreed that all of Plaintiff's claims were related. Accordingly, "the [C]ourt proceeds to the second step of *Hensley* inquiry, which asks whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Id.* (quoting *Hensley*, 461 U.S. at 434). "The court may appropriately reduce the lodestar calculation if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* (quoting *Harman v. City and Cnty. of S.F.*, 136 Cal. App. 4th 1279, 1312, 39 Cal. Rptr. 3d 589 (2006))." Order re: Motion for Attorneys' fees at 8-9, *Marine Bargas v. Rite Aid Corp.*, et al., Case No. 2:13-CV-03865 (C.D. Cal. July 10, 2017) (ECF No. 161).

Here, the Motion overstates the relief that Plaintiffs' counsel's efforts secured. Rather than deliver fair pricing to their clients, the price of Clear Eyes Pocket Pal has actually increased for Plaintiffs *and* their customers.[3] After the jury verdict (which

[3] The price of Clear Eyes Pocket Pal has indisputably increased. *See* Declaration of T. Holloway, ¶ 5 & Exhibit D (Feb. 12, 2024) (ECF No. 348-1). At trial, most of the Plaintiffs testified that they do not pass on any savings to their customers. *See, e.g.*, Dec. 12, 2023 Trial Tr. at 1047:21-23 (Javid Sahrifi of Manhattan Wholesale) ( "Q. So whether you got the product cheaper or not, you kept the price to them the same? A.

will be appealed), Prestige changed its pricing for Clear Eyes to avoid facing potential liability to other customers pending appeal. Even Plaintiffs' expert Dr. McDuff admitted that in the face of a requirement to charge the same price to all buyers, one option would be for the selling firm to increase the price to the higher price. Dec. 12, 2023 Trial Tr. at 1153:23-1154:2, 12-14, 17-18. That is exactly what has happened in the real world.

Because the price has not gone down, Plaintiffs' counsel's efforts have not actually achieved a better result for all buyers in the market. The evidence shows that only two of the Plaintiffs—Value and PITCO—have placed orders since January 2024. *See* Declaration of Jeffrey Burnett, ¶ 4. Additionally, no Plaintiffs or other wholesalers have taken advantage of Prestige's new 4% bill back promotion for the wholesale channel launched in April 2024. *Id.* at ¶ 5. The Court should not grant Plaintiffs' request for any enhancement.[4]

### D. Plaintiffs' Rejection of Defendants' Rule 68 Offer of Judgment Warrants a Reduction in Fees.

Any award of attorneys' fees must take into account Plaintiffs' rejection of Prestige's offer of judgment pursuant to Fed. R. Civ. P. 68.

---

Yes. Looks like it.").

[4] The Court should not award any fee enhancement here, since Plaintiffs' counsel's contingency fee will be disproportionately high due to the treble damages awarded in this case. *See Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1176, 74 Cal. Rptr. 2d 510 (1998) (citing *Serranno v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977); *see also Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 834, 112 Cal. Rptr. 2d 284 (2001) (noting that the list of potentially relevant factors identified by the California Supreme Court in *Serrano III* courts may consider in determining whether to award an enhancement to the lodestar is illustrative rather than exclusive). For example, *Weeks* determined that the amounts involved and the results obtained at trial, which included a windfall in the form of a substantial award of punitive damages, militated against enhancing a fee award. *Weeks,* 63 Cal. App. 4th at 1176. Here, trebling of the jury's awards for Robinson-Patman Act and UPA damages necessarily results in a windfall recovery that more than compensates Plaintiffs for their actual damages after payment of the 38% contingency fee. The Court should also consider this factor in denying an enhancement to the lodestar here, particularly since the purpose of a fee award is not to punish Defendants, but to determine a "reasonable" fee and to ensure that Plaintiffs will be fully compensated and will not have to bear the expense of litigation. *Id.*

When a plaintiff rejects a Rule 68 offer, the calculation of reasonable fees will depend in part on the judgment the plaintiff obtained at trial compared to the Rule 68 offer. *See Haworth v. State of Nev.*, 56 F.3d 1048 (9th Cir. 1995). Further:

> In determining what fee is reasonable in this circumstance, the district court must take into consideration the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made. The enumeration of these factors is not meant to be an exhaustive list. The district court may take into consideration such other factors as it deems appropriate in determining the amount of reasonable attorney fees to be awarded.

*Id.* at 1052-53.[5]

In our case, Plaintiffs rejected a $450,000 offer of judgment served in December 2019 after the close of discovery and before trial. This offer accounted for the strength of Defendants' affirmative and other defenses, such as functional discounts, which the Court recognized were supported by the trial evidence Defendants presented. Dec. 14, 2023 Trial Tr. at 1490:14-18. Also, that offer was actually higher than the damages secured at trial by all nine Plaintiffs combined, before trebling. And up to that point, Plaintiffs' counsel's time totaled 1,007.5 hours, which represent approximately one-third of the fees claimed now.

Based on statements in Mr. Poe's declaration, Plaintiffs' counsel are already receiving a payment of approximately 38% of the damages awarded to their clients. *See* Decl. of M. Poe at ¶ 38 (ECF No. 377-1) ("After deducting our contingency fee and the $216,121.72 in expenses that Mr. Gaw and I had advanced to date, that settlement offer would have left our clients with just over $7,000 apiece, and no remedy at all against future discrimination.").[6] Still, the "$7,000 apiece" that Plaintiffs

---

[5] *Haworth* also stands for the proposition that "the prevailing party is not automatically deemed to have attained complete rather than partial success. Rather, the partial success determination is part of the district court's secondary inquiry into what fee is reasonable in a given case." *Id.* at 1052 (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1403 (9th Cir. 1992)). Here, Plaintiffs were awarded fractions of their claimed damages, and Border took nothing. *See also Zeigler*, 2023 WL 3432238 at *1, 11-17.

[6] Thirty-eight percent of $1,172,500 is $445,550. But Defendants can only speculate

turned down is not that far off from what the jury actually awarded. In fact, Border would have been much better off accepting Prestige's Rule 68 offer. Because Border was awarded $0 in damages, the Court should reduce the fee award for "Plaintiff's failure to prevail on certain claims at trial." *See Russell v. Walmart Inc.*, No. CV 19-5495-MWF (JCx), 2024 WL 305388 (C.D. Cal. Jan. 2, 2024) (citing *Garvey Sch. Dist. v. V.S.*, No. 2:19-CV-01248-CAS (JCx), 2020 WL 208807, at *6 (C.D. Cal. Jan. 13, 2020)).

Defendants' offer of judgment is relevant in considering the fees to be awarded because the Plaintiffs did not recover all the damages they sought. *See Haworth*, 56 F.3d at 1052. Further, Plaintiffs put in a damages case that went through 2022. Based on the jury's verdict that was a far cry from Dr. McDuff's damages opinion, the jury likely agreed with the defense that Plaintiffs' damages were inflated. If the Court deducts the thousands of hours that Plaintiffs' counsel expended after receiving the offer, Defendants' Rule 68 offer was pretty accurate at the time. Defendants put a significant offer on the table for Plaintiffs to consider, and they did not do much better at trial.

**E. The Court Should Not Order Reimbursement of Non-Taxable Costs.**

Plaintiffs cannot recover all non-taxable costs when not every Plaintiff had a UPA claim. In the Motion, Plaintiffs seek to use a California statute to deliver cost-recovery to all Plaintiffs, including those whose businesses are in New York and elsewhere. This would essentially apply the UPA to the benefit of those non-California Plaintiffs. The Court should reject Plaintiffs' request for reimbursement of $35,546.99 in non-taxable costs.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny in part Plaintiffs' request for attorneys' fees and costs.

---

because counsel did not include their actual contingent fee agreements with Plaintiffs in the Motion papers.

Dated: June 17, 2024

**DUANE MORRIS LLP**

By: */s/ Sean Patterson*
Michael L. Fox
Robert Kum
Sean Patterson
Christine Cusick Ross
William Shotzbarger (*pro hac vice*)
Attorneys for Defendants
PRESTIGE CONSUMER HEALTHCARE INC. (fka "Prestige Brands Holdings, Inc.") and MEDTECH PRODUCTS INC.